501 A.2d 1128

Steven SCHRINER and Terry Schriner, His Wife,
t/a Schriner Farms

v.

PENNSYLVANIA POWER & LIGHT COMPANY, Ray D. Shenk, t/a Shenk's Farm Service, Individually and as Agent for Dairy Equipment Company and Dairy Equipment Company t/a Boumatic.

Appeal of PENNSYLVANIA POWER & LIGHT COMPANY,

Pennsylvania Public Utility Commission, Amicus Curiae.

Superior Court of Pennsylvania.

Argued March 12, 1985.

Filed Dec. 6, 1985.

178

Patrick J. O'Connor, Philadelphia, for appellant.
John R. Bonner, Williamsport, for Schriner, appellees.
Kevin E. Osborne, Harrisburg, for Shenk, appellee.
Richard J. Mills, Pittsburgh, for Dairy Equip., appellee.

Before SPAETH, President Judge, and JOHNSON and SHOYER *, JJ.

JOHNSON, Judge:

In this appeal, an electric power company asks us to decide whether the Pennsylvania Public Utility Commission (PUC), rather than the court of common pleas, has primary jurisdiction over a suit alleging injury to dairy cattle as a result of "stray voltage" from milking equipment electrified by the power company. The company would also have us determine whether the doctrine of strict liability in tort may be applied against a Pennsylvania public utility. The appeal is from an interlocutory order which denied the preliminary objections of Appellant, Pennsylvania Power & Light Company (PP & L). The PUC has filed a brief, as amicus curiae, claiming that it has initial and primary jurisdiction. We granted Appellant's petition for permission to appeal.

We conclude that the trial court was correct in its conclusion that jurisdiction of this matter properly lies with the court of common pleas. We also conclude that the doctrine of strict liability may, under proper circumstances, be applied against a Pennsylvania public utility. Accordingly, we affirm the holding of the court below and remand for further proceedings not inconsistent with the views set forth herein.

Appellees Steven and Terry Schriner (the Schriners) seek damages for the loss of their dairy cattle which, as a result of a mastitis infection, either died or had to be destroyed. The Schriners allege that this infection occurred as a result of "stray voltage" from milking equipment which had been manufactured by Appellee Dairy Equipment Company t/a Boumatic, sold and installed by Appellee Ray D. Shenk t/a Shenk's Farm Service, and electrified by PP & L.

The first of the two controlling questions of law certified to this Court for review concerns whether the Pennsylvania Public Utility Commission, and not the court, has primary

---

* Judge SHOYER, Senior Judge of the Court of Common Pleas of Philadelphia County, Pennsylvania, is sitting by designation.

jurisdiction over the subject matter of this litigation. We think not.

It was recently stated by our supreme court that "[c]ourts should not be too hasty in referring a matter to an agency, or to develop a 'dependence' on the agencies whenever a controversy remotely involves some issue falling arguably within the domain of the agency's 'expertise.' " *Elkin v. Bell Telephone Company of Pennsylvania*, 491 Pa. 123, 134, 420 A.2d 371, 377 (1980). With this caveat in mind, we proceed to address PP & L's first issue.

■ The Public Utility Code, Act of July 1, 1978, P.L. 598, No. 116, § 1, 66 Pa.C.S. § 101 *et seq.*, placed a broad range of subject matter under the control of the PUC making that agency responsible for ensuring the adequacy, efficiency, safety and reasonableness of public utility services, facilities and/or rates. *See* 66 Pa.C.S. § 1501; *Feingold v. Bell of Pennsylvania*, 477 Pa. 1, 383 A.2d 791 (1977). In addition, there are benefits to be derived from making use of the special experience and expertise of the PUC in complex areas with which judges and juries have little familiarity. *See Elkin v. Bell Telephone Company of Pennsylvania*, *supra.* Therefore, where the subject matter is within an agency's jurisdiction *and* where it is a complex matter requiring special competence, with which the judge or jury would not or could not be familiar, the proper procedure is for the court to refer the matter to the appropriate agency. *Id.* 491 Pa. at 134, 420 A.2d at 377.

The first question we must ask, then, is whether the instant lawsuit involves the reasonableness, adequacy or sufficiency of Appellant PP & L's operation of its transmission lines, thereby bringing this case within the primary jurisdiction of the PUC. Appellant relies heavily upon *Elkin* in making its argument that primary jurisdiction of this issue rests with the PUC. In *Elkin*, however, plaintiff stood in the position of a consumer of the particular utility involved, alleging that the insufficiency of telephone services provided to plaintiff led to various damages. Thus, the question upon which liability attached was the reasonable-

ness, adequacy and sufficiency of the telephone service being furnished to a known customer.

In the instant case, while the Schriners have ostensibly sued from the position of consumers, the complaint contains allegations which only remotely deal with the reasonableness, adequacy, efficiency or safety of the services, facilities or rates provided by Appellant, PP & L. Among the specific allegations of negligence, the Schriners have stated that PP & L, having exclusive control of its distribution system, allowed voltage to escape therefrom in large enough quantity to adversely affect the Schriners' dairy cattle; that PP & L failed to advise the Schriners of corrective measures which could have been taken by them to eliminate the stray voltage problem; and that PP & L undertook to advise and supervise corrective measures to eliminate the problem and did so negligently, allowing the problem to continue and eventually injure the Schriners. These are traditional concepts of negligence which only tangentially address the reasonableness, adequacy and sufficiency of the electric service being provided by PP & L.

PP & L argues, further, that the problem of "stray voltage" is so complex that it requires the special expertise of the PUC. However, resolution of the Schriners' claims depends upon no rule or regulation predicated upon the peculiar expertise of the PUC, no agency policy, no question of service or facilities owed the general public, and no particular standard of safety or convenience articulated by the PUC. *DeFrancesco v. Western Pennsylvania Water Company*, 499 Pa. 374, 378, 453 A.2d 595, 597 (1982).

The gravamen of the Schriners' complaint is that they sustained injury due solely to the negligence of PP & L in failing to deal with the problem of stray electricity on the Schriners' farm. It is important to note that a complaint brought before the PUC, seeking damages, may not result in an award by that body, even should the PUC determine the complaint to be meritorious, as the PUC lacks authority to make such an award. *See Feingold v. Bell of Pennsylvania, supra.* This was the type of situation ad-

dressed by our supreme court in *Elkin, supra,* where it was stated:

> Where ... the matter is not one peculiarly within the agency's area of expertise, but is one which the courts or jury are equally well-suited to determine, the court must not abdicate its responsibility. In such cases, it would be wasteful to employ the bifurcated procedure of referral [to the PUC], as no appreciable benefits would be forthcoming.

*Elkin, supra,* 491 Pa. at 134–35, 420 A.2d at 377 (footnote omitted).

> Thus, we agree with the trial court that

> [w]hile the expertise of a member of the PUC would be helpful, this area of litigation is no more complex than many others which come before the Court. With the assistance of expert testimony, there is no reason why a judge or jury could not become familiar with the alleged problem of stray voltage injury to dairy cattle.

Opinion, 5/31/83 at 4. And, we agree with *Elkin* that it would be wasteful to employ a bifurcated procedure of referral to the PUC, as that body is incapable of providing an adequate remedy should the Shriners' complaint be found to have merit. Resolving the essential question of whether PP & L failed to perform what is alleged to have been an affirmative duty requires no special knowledge or experience and falls within the scope of the ordinary business of our courts. *See DeFrancesco v. Western Pennsylvania Water Company, supra,* 499 Pa. at 378, 453 A.2d at 597.

The second controlling question of law certified to this Court for review concerns the applicability of the doctrine of strict liability in tort to a Pennsylvania public utility.

Our courts have long recognized that the standard of care imposed upon a supplier of electric power, particularly when that power is supplied at high voltage, is among the highest recognized in the law of negligence, *Densler v. Metropolitan Edison Company,* 235 Pa.Super. 585, 345 A.2d 758 (1975); and that, while a supplier of electricity must exer-

cise the highest degree of care, it is not an insurer against injury. *Skoda v. West Penn Power Company,* 411 Pa. 323, 191 A.2d 822 (1963); *Kintner v. Claverack Rural Electric Co-operative, Inc.,* 329 Pa.Super. 417, 478 A.2d 858 (1984). In *Karam v. Pennsylvania Power & Light Company,* 205 Pa.Super. 318, 322, 208 A.2d 876, 878 (1965), this Court unequivocally stated that "the salutary and well settled rule in this Commonwealth is that one using a dangerous agency or instrumentality is bound to exercise care commensurate with the danger. One maintaining a high voltage electric wire line is required to exercise the highest degree of care practicable." *See also Stark v. Lehigh Foundries, Inc.,* 388 Pa. 1, 130 A.2d 123 (1957); *Bosley v. Central Vermont Public Service Corporation,* 127 Vt. 581, 255 A.2d 671 (1969).

The appellate courts of this Commonwealth have not, however, directly addressed the possible application of strict liability, under the Restatement (Second) of Torts, to a supplier of electricity. *But see University of Pittsburgh v. Equitable Gas Company,* 5 Pa.D. & C.3d 303 (Alleg.Co. 1978); *Wivagg v. Duquesne Light Company,* 73 Pa.D. & C.2d 694 (Alleg.Co.1975).

■ Pennsylvania case law has expressly recognized the doctrine of strict liability as set forth under Restatement (Second) of Torts § 402A. *See Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966). Section 402A provides:

**§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer**

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

When we distill § 402A into its constituent elements, we find that the following are necessary to an appropriate application of this section:

(1) a product;

(2) a sale of that product;

(3) a user or consumer;

(4) a defective condition, unreasonably dangerous; and

(5) causation—that the product caused physical harm to the ultimate user or consumer, or to his property.

If any of these requisite elements remains unsatisfied, § 402A has no applicability.

The first of these elements, then, requires a determination by this Court that electricity is a "product" for purposes of § 402A liability. While this is an issue of first impression in this Commonwealth, several other states which have considered whether electricity may be considered a "product" under § 402A have concluded that it is. *See, e.g., Pierce v. Pacific Gas & Electric Company,* 166 Cal.App.3d 68, 212 Cal.Rptr. 283 (1985); *Smith v. Home Light and Power Company,* 695 P.2d 788 (Colo., 1984); *Hedges v. Public Service Company of Indiana, Inc.,* 396 N.E.2d 933 (Ind.App., 1979); *Petroski v. Northern Indiana Public Service Company,* 171 Ind.App. 14, 354 N.E.2d 736 (1976); *Ransome v. Wisconsin Electric Power Company,* 87 Wis.2d 605, 275 N.W.2d 641 (1979). *Cf. Genaust v. Illinois Power Company,* 62 Ill.2d 456, 343 N.E.2d 465 (1976) (in which the court assumes, *arguendo,* that electricity is a "product" for purposes of a § 402A analysis). Our research has produced no case in which there was a determination by the court that electricity should not be considered a product for purposes of strict liability.

PP & L asserts that appellate courts from other jurisdictions have found that electricity is *not* a product. The cases cited by PP & L do not support such an assertion. In *Farina v. Niagara Mohawk Power Corporation,* 81 A.D.2d 700, 438 N.Y.S.2d 645 (1981), for example, the court, in dictum, stated that "throughout the discussions in the commentaries and the cases dealing with the claims of those who have been injured through contact with electrical lines there is the implicit suggestion that electricity.... is not a product within the contemplation of the doctrine's [402A] authors." *Id.* at 700, 438 N.Y.S.2d at 647. This was not a holding of the case, however, which merely reversed a denial by the lower court of defendant's motion to dismiss plaintiff's causes of action for strict products liability and breach of warranty. A holding that "electricity is not a product" was not necessary to the court's disposition and the court did not so hold.

In *Rodgers v. Chimney Rock Public Power District,* 216 Neb. 666, 345 N.W.2d 12 (1984), a negligence case, plaintiff had urged that the court adopt the doctrine of strict liability with respect to the distribution of electrical power and that the court consider electric power a product or "goods" so that the rules regarding implied warranties would be applicable. *Id.* at 671, 345 N.W.2d at 15–16. The court did not, as Appellant states, "reject[ ] the notion that electricity is a product within the purview of section 402A of the *Restatement (Second) of Torts"*; the court merely refused to entertain a theory of strict liability in a negligence case.

In *Pilkington v. Hendricks County Rural Electric Membership Corporation,* 460 N.E.2d 1000 (Ind.App., 1984), another negligence case, the court described the standard of care required of companies transmitting electricity, stating that "the doctrine of strict liability is inapplicable to electric utilities." 460 N.E.2d at 1005. The court made no determination as to whether electricity can or can not be considered a product for purposes of § 402A. Nor can we find any such determination—that electricity can not be considered a product—in either of the two remaining cases cited by PP &

L: *Wirth v. Mayrath Industries, Inc.,* 278 N.W.2d 789 (N.D.1979) and *Ferguson v. Northern States Power Company,* 307 Minn. 26, 239 N.W.2d 190 (1976).

■ In *Ransome v. Wisconsin Electric Power Company,* 87 Wis.2d at 610, 275 N.W.2d at 643, the Wisconsin Supreme Court stated:

> While there probably are numerous technical definitions of "electricity," we need not be concerned with those accurate descriptions here—suffice it to say it is a form of energy that can be made or produced by men, confined, controlled, transmitted and distributed to be used as an energy source for heat, power and light and is distributed in the stream of commerce. The distribution might well be a service, but the electricity itself, in the contemplation of the ordinary user, is a consumable product.

We agree with the reasoning of the Wisconsin court, and hold that electricity can be a "product," within the meaning of § 402A.

It is not sufficient for an analysis of possible § 402A liability, however, that we determine simply that electricity is a product within the meaning of that section. The *sale* of a product is fundamental to any strict liability claim. *See* § 402A(1). *See also Smith v. Home Light and Power Company, supra.* With a product such as electricity, a literal "sale" of the product may not be required; however, courts willing to call electricity a product have been consistent in holding that the electricity must have been placed into the stream of commerce before § 402A strict liability can attach. *See Pierce v. Pacific Gas & Electric Company, supra; Cratsley v. Commonwealth Edison Company,* 38 Ill.App.3d 55, 347 N.E.2d 496 (1976); *Hedges v. Public Service Company of Indiana, Inc., supra; Petroski v. Northern Indiana Public Service Company, supra; Williams v. Detroit Edison Company,* 63 Mich.App. 559, 234 N.W.2d 702 (1975); *Aversa v. Public Service Electric and Gas Co.,* 186 N.J.Super. 130, 451 A.2d 976 (1982).

Entry of electricity into the stream of commerce has been deemed to occur, generally, when the electricity leaves the transmission lines and passes through the customer's meter. *See, e.g., Williams v. Detroit Edison Company, supra.* In *Pierce v. Pacific Gas & Electric Company,* 166 Cal.App.3d 68, 212 Cal.Rptr. 283 (1985), the California Court of Appeal stated:

> We emphasize that our holding is limited to cases where the electricity is actually in the "stream of commerce," and expected to be at marketable voltage. *In most cases this will mean the electricity must be delivered to the customer's premises, to the point where it is metered,* although the many variations in electrical systems prevent our drawing a "bright line" at a particular point.

*Id.* at 84, 212 Cal.Rptr. at 292 (footnote omitted) (emphasis added). Similarly, in *Aversa v. Public Service Electric and Gas Co.,* 186 N.J.Super. 130, 451 A.2d 976 (1982), the New Jersey Superior Court emphasized:

> Where, however, the electricity is no longer in transmission in the public right of way, but has been introduced into the stream of commerce by a *sale thereof or otherwise,* the liability of the electric company is no longer dependent upon a showing of negligence but may be based upon a product liability cause of action unrelated to fault.

*Id.* at 135, 451 A.2d at 979 (emphasis in original) (citations omitted). The *Aversa* court explained the reasoning behind the holdings above-described:

> The cases in which liability for electricity is restricted to the traditional principles of negligence ... confront only the situation where the electricity is being transmitted over high tension wires for ultimate availability to the consuming public. The transmission of electricity, as well as the transmission of other similar type consumable goods, is a service being rendered by the utility to prospective purchasers. While being transmitted, liability is controlled by standards of negligence and not strict liabil-

ity, since any injury sustained as a result thereof is causally connected only to the transmission or transportation service and is unrelated to the ultimate sale of the product.

*Id.* at 135, 451 A.2d at 979.

In other words, while still in the distribution system, electricity is a service, not a product; electricity only becomes a product, for purposes of strict liability, once it passes through the customer's meter and into the stream of commerce. *See Smith v. Home Light and Power Company, supra.*

■ Thus, under our holding herein, if electricity "in a defective condition, unreasonably dangerous" passes through the meter of a user or consumer and into the stream of commerce, causing physical harm to the ultimate user or consumer, or to his property, the doctrine of strict liability in tort may be applied against the public utility which "engaged in the business of selling such a product," which product "[was] expected to and [did] reach the user or consumer without substantial change in the condition in which it was sold." Restatement (Second) of Torts § 402A(1).

While Appellant PP & L argues that public policy militates against this conclusion, this Court believes otherwise. The inquiry regarding public policy is for the court, *Azzarello v. Black Brothers Company, Inc.,* 480 Pa. 547, 558, 391 A.2d 1020, 1025–26 (1978); *Dambacher by Dambacher v. Mallis,* 336 Pa.Super. 22, 46–51, 485 A.2d 408, 420–23 (1984) (en banc), *allocatur granted; Lobianco v. Property Protection, Inc.,* 292 Pa.Super. 346, 359–62, 437 A.2d 417, 424–26 (1981), and the factors relevant to the inquiry support the application of strict liability to a utility company supplying electricity as a product. *See generally Salvador v. Atlantic Steel Boiler Co.,* 457 Pa. 24, 33 n. 15, 319 A.2d 903, 908 n. 15 (1974); *Kassab v. Central Soya,* 432 Pa. 217, 230–31 n. 6, 246 A.2d 848, 854, n. 6 (1968); *Dambacher by Dambacher v. Mallis, supra* 336 Pa.Super. at 50–51, 485 A.2d at 423. *But see* Comment, *Torts of Electric Utilities:*

*Can Strict Liability Be Plugged In?*, 11 Loyola L.A.L.Rev. 775 (1978).

Order affirmed. Remanded for proceedings not inconsistent with this Opinion. Jurisdiction is not retained.