374 Pa. Superior Ct. 46 (1988)
542 A.2d 140
George F. SMITHBOWER, Administrator of the Estate of Timothy W. Smithbower, Deceased, on Behalf of the Next of Kin of Timothy W. Smithbower, Deceased and George F. Smithbower, Administrator of the Estate of Timothy W. Smithbower, Deceased, on Behalf of the Estate of Timothy W. Smithbower, Deceased and Cathy S. Smithbower, Administratrix of the Estate of George A. Smithbower, Deceased, on Behalf of the Next of Kin of George A. Smithbower, Deceased, and Cathy S. Smithbower Administratrix of the Estate of George A. Smithbower, Deceased, on Behalf of the Next of Kin of George A. Smithbower, Deceased and Catherine F. Boland, Administratrix of the Estate of Gregory J. Boland, Deceased, on Behalf of the Next of Kin of Gregory J. Boland, Deceased, and Catherine F. Boland, Administratrix of the Estate of Gregory J. Boland, Deceased, on Behalf of the Estate of Gregory J. Boland, Deceased, Appellants,
v.
SOUTHWEST CENTRAL RURAL ELECTRIC COOPERATIVE, INC., Pennsylvania Electric Company, a Corporation and Cresson Feed Mill, Inc., t/d/b/a Hines Equipment, a Corporation, Appellees,
v.
NEW IDEA FARM EQUIPMENT, A DIVISION OF AVCO CORPORATION, Appellee,
v.
SPEED KING MANUFACTURING COMPANY, Appellee.
Supreme Court of Pennsylvania.
Argued February 24, 1988.
Filed May 25, 1988.
*48 Raymond J. Zadzilko, Edensburg, for appellants.
Louis C. Long, Pittsburgh, for Pennsylvania Elec. Co., appellee.
Before McEWEN, DEL SOLE and JOHNSON, JJ.
DEL SOLE, Judge:
This is an appeal from Judgment entered August 27, 1987, in the Court of Common Pleas of Cambria County, Civil Division.[1] We affirm.
The instant case was filed by and on behalf of the estates and the next of kin of Timothy W. Smithbower, George A. Smithbower and George J. Boland, who were electrocuted and died when a portable grain auger (elevator) which they were moving came into contact with a high voltage overhead distribution power line. The accident occurred September 21, 1982, at the Robert C. Varner farm located in East Carroll Township, Cambria County, Pennsylvania.
*49 Appellants filed suit against: Southwest Central Rural Electric Cooperative, (hereinafter referred to as "Southwest Central"), whose distribution line the grain auger touched; Pennsylvania Electric Co., (hereinafter referred to as "Pennsylvania Electric"), which sold the electricity to Southwest Central; and Cresson Feed Mill, Inc., t/d/b/a Hines Equipment, the company which sold the auger to Robert Varner. New Idea Farm Equipment, a Division of AVCO Corporation, and Speed King Manufacturing Co., distributor and manufacturer of the auger, were later joined in the suit as additional defendants.
Pennsylvania Electric filed a motion for summary judgment which was granted. This appeal followed.
The bases of liability asserted against Pennsylvania Electric are: (1) absolute liability, Restatement (Second) of Torts §§ 519, 520 (1977); (2) strict liability in tort, Restatement (Second) of Torts § 402 A (1965); and (3) negligence.
Summary judgment may be granted under Pa.R.C.P. 1035(b) which provides, in pertinent part:
The judgment sought shall be rendered if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party in entitled to a judgment as a matter of law.
See also Ferguson v. King, 362 Pa.Super. 543, 524 A.2d 1372 (1987).
In the court's determination of whether a motion for summary judgment should be granted, the following principles have application:
The moving party bears the burden of demonstrating that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. Thompson Coal Company v. Pike Coal Company, 488 Pa. 198, 412 A.2d 466 (1979); Weiss v. Keystone Mack Sales Inc., 310 Pa.Super. 425, 456 A.2d 1009 (1983). In determining whether the moving party has met this burden, the court must examine the record in the light most favorable to *50 the non-moving party, giving that party the benefit of all reasonable inferences. Thompson Coal Company v. Pike Coal Company, supra; Schacter v. Albert, 212 Pa.Super. 58, 239 A.2d 841 (1968). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Thompson Coal Company v. Pike Coal Company, supra; Breslin v. Ridarelli, 308 Pa.Super. 179, 454 A.2d 80 (1982). Summary judgment should be granted only in the clearest case, where the right is clear and free from doubt. Thompson Coal Company v. Pike Coal Co., supra; Weiss v. Keystone Mack Sales, Inc., supra.

Bertani v. Beck, 330 Pa.Super. 248, 251-52, 479 A.2d 534, 535-36 (1984). See also, Ferguson v. King, supra.
Initially, Appellant contends that the supplying as well as the transmission of high voltage electric current is an abnormally dangerous activity which exposes Pennsylvania Electric, the supplier of electrical current, to strict liability for harm therefrom under Restatement (Second) of Torts §§ 519-520.
Restatement (Second) of Torts §§ 519-520 provides:
(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.
(2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.
Section 520. Abnormally Dangerous Activities
In determining whether an activity is abnormally dangerous, the following factors are to be considered:
(a) existence of high degree of risk of some harm to the person, land or chattels of others;
(b) likelihood that the harm that results from it will be great;
(c) inability to eliminate the risk by the exercise of reasonable care;

*51 (d) extent to which the activity is not a matter of common usage;
(e) inappropriateness of the activity to the place where it is carried on; and
(f) extent to which its value to the community is outweighed by its dangerous attributes.
Appellate courts in Pennsylvania have not addressed the issue of whether the sale of electricity at an unmarketable voltage constitutes an abnormally dangerous activity. We find no Pennsylvania case law which extends liability arising from abnormally dangerous activities to electricity.
Thus, we look to our sister states for guidance and find that the courts have consistently held that the use and maintenance of high voltage electrical transmission lines by electric companies does not constitute an abnormally dangerous activity. Clearly, most of the courts rejected the imposition of absolute liability against an electric company. See Nelson v. Commonwealth Edison Co., 124 Ill.App.3d 655, 80 Ill.Dec. 401, 465 N.E.2d 513 (1984). (Plaintiff injured when touching a 7,200 volt transmission line. Electric suppliers not strictly liable since electricity necessary for existence). New Meadows Holding Co. v. Washington Water Power Co., 34 Wash.App. 25, 659 P.2d 1113 (1983), aff'd 102 Wash.2d 495, 697 P.2d 212 (1984). (Decedent came into contact with defendant utility's uninsulated power line. Court found that activity did not constitute abnormal activity and that that value to the community outweighed the danger present). Hedges v. Public Service Co. of Indiana, 396 N.E.2d 933 (Ind.App. 1979) (Injuries sustained as the result of coming in contact with high voltage transmission wires. Not strictly liable as abnormally dangerous activity). Wirth v. Mayrath Industries, Inc., 278 N.W.2d 789 (N.D. 1979) (Farmer electrocuted when he was operating a grain auger which came into contact with an uninsulated high voltage power line. Court deferred the ultimate decision of the issue of abnormally dangerous activity to the legislature because of severe economic consequences). Bosley v. Central Vermont Public Service *52 Corp., 127 Vt. 581, 255 A.2d 671 (1969). (No strict liability where nine-year-old boy came in contact with 4,100 volt carrying wires. Electric company not strictly liable).
Therefore, after careful study of the decisions of the courts of our sister states, we too hold that the provision and maintenance of electrical transmission lines and the transmission of high voltage electricity by electric companies do not constitute abnormally dangerous activities and reject the imposition of absolute liability against electric companies in this area.
Next, appellant contends that Pennsylvania Electric is strictly liable under the Restatement (Second) of Torts § 402A. (1966) because it sold electrical power.
In Schriner v. Pennsylvania Power & Light Co., 348 Pa.Super. 177, 184-85, 501 A.2d 1128, 1131-32 (1985), this Court held:
Pennsylvania case law has expressly recognized the doctrine of strict liability as set forth under Restatement (Second) of Torts § 402A. See Webb v. Zern, 422 Pa. 424, 220 A.2d 853 (1966). Section 402A provides:
§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and

*53 (b) the user of consumer has not bought the product from or entered into any contractual relation with the seller.
When we distill § 402A into its constituent elements, we find that the following are necessary to an appropriate application of this section:
(1) a product;
(2) a sale of that product;
(3) a user or consumer;
(4) a defective condition, unreasonably dangerous; and
(5) causation that the product caused physical harm to the ultimate user or consumer, or to his property.
If any of these requisite elements remains unsatisfied, § 402A has no applicability.
The Schriner court ruled that electricity can be a 402A product. 348 Pa.Super. at 187, 501 A.2d at 1133. The Schriner court in discussing the sale of electricity, stated:
With a product such as electricity, a literal "sale" of the product may not be required; however, courts willing to call electricity a product have been consistent in holding that the electricity must have been placed into the stream of commerce before § 402A strict liability can attach. (citations omitted).
348 Pa.Super. at 187, 501 A.2d at 1133. The Schriner court further stated:
Entry of the electricity into the stream of commerce has been deemed to occur, generally, when the electricity leaves the transmission lines and passes through the customer's meter (citations omitted).
348 Pa.Super. at 187, 501 A.2d at 1133.
The facts of the instant case show that, on September 21, 1982, while the three (3) victims, Timothy W. Smithbower, George A. Smithbower and George Boland, were attempting to turn and move the grain auger, a spark, current or electrical charge was transmitted from high voltage electrical transmission lines into the auger which was held or touched by each of the victims. The current caused the *54 three (3) men to receive a violent electric shock and sustain injuries resulting in their deaths. (Plaintiff's Complaint, pp. 5-6, paragraphs 16-18). The transmission lines in question were located near the buildings at the Varner farm.
In the instant case, electricity had not yet been placed into the stream of commerce since it had not yet passed through the meter at the Varner farm. Although a sale of electricity took place between Pennsylvania Electric and Southwest Central, we find that, because the electricity had not yet left the transmission lines, a sale of the electricity as a 402A product had not occurred. Schriner v. Pennsylvania Power & Light Co., supra. We agree with the trial court that since the "sale" requirement under Restatement (Second) of Torts § 402A had not been completed in the instant case, strict liability cannot be imposed. However, general concepts of negligence are still applicable.
Appellant's allege that Pennsylvania Electric was negligent in failing to inspect Southwest Central's power lines.
However, we find that the duty to inspect and maintain power lines rest with the company in possession of said power lines, i.e., in this case, Southwest Central. See Meehan v. Philadelphia Electric Co., 424 Pa. 51, 225 A.2d 900 (1967); Yoffee v. Pennsylvania Power and Light Co., 385 Pa. 520, 123 A.2d 636 (1956). Appellants themselves contend:
[A]t all times relevant hereto the aforementioned high voltage electrical transmission lines and equipment were under the possession, operation and control of the agents, workmen, servants and/or employees of the defendant, Southwest Central Rural Electric Cooperative, Inc., acting within the scope of their employment.
(Plaintiff's Complaint, p. 3, paragraph 6).
In addition, even though Pennsylvania Electric may have reserved the right to inspect Southwest Central's power lines, there is no evidence to show that Pennsylvania Electric's failure to inspect the lines increased the risk of harm or that anyone relied on Pennsylvania Electric's right *55 to conduct such inspections. Restatement (Second) of Torts §§ 323, 324A.
Judgment affirmed.
NOTES
[1] We note that the order granting summary judgment was dated April 8, 1987, and the appeal was filed August 27, 1987. While at first blush the appeal appears untimely, we note that the order was not docketed until July 29, 1987. We further note that on August 27, 1987, a praecipe for judgment was filed, and the docket stated "Judgment entered and indexed on Judgment index docket."

We caution the trial court and counsel that an order granting summary judgment is immediately appealable. A praecipe for judgment is not necessary. Nothing in the record explains the delay between the order and its entry. The appeal is properly before us since a final order is deemed entered on the date docketed. See Pa.R.Civ.P. 236 and U.S. Nat. Bank in Johnstown v. Johnson, 321 Pa.Super. 352, 468 A.2d 515 (1983), aff'd 506 Pa. 622, 487 A.2d 809 (1985).