## Frampton v. Pennsylvania Power and Light Company

*Barry L. Gross,* for plaintiff.
*Charles E. Wasilefski,* for defendant.

HESS, *J.,* January 8, 1990 — This action, commenced by June L. Frampton, administratrix of the estate of Donald H. Frampton Sr., stems from an incident which occurred on December 8, 1988, resulting in the death of Donald H. Frampton Sr. The matter is presently before the court on defendant's preliminary objection to plaintiff's complaint. As recited in the complaint, plaintiff's decedent was engaged in duties arising from his employment as a sheet metal worker, on December 8, 1988, on a site located at 300 Salem Church Road, Hampden Township. Plaintiff's decedent and several of his co-workers were attempting to maneuver a scaffolding apparatus when it came into contact with a high-voltage overhead electric power line owned and operated by defendant, Pennsylvania Power and Light. The resultant passing of electrical current through plaintiff's decedent's body resulted in his death.

## DISCUSSION

Counts two and four of the complaint, which are the focus of defendant's demurrer, sound in strict liability under the Restatement (Second) of Torts, §402A. Defendant seeks to have these portions of the complaint dismissed. The Restatement (Second) of Torts §402A provides:

"§402A. *Special Liability of Seller of Product for Physical Harm to User or Consumer* —

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

Defendant counters that this section of the Restatement is inapplicable to the instant matter because electricity, as involved here, is not a product within the definition of section 402A. We agree.

The Superior Court dealt squarely with the issue of whether electricity is a product, within the meaning of section 402A, in *Schriner v. Pennsylvania Power & Light Co.,* 348 Pa. Super. 177, 501 A.2d 1128 (1985). In *Schriner,* plaintiffs brought suit against PP&L for injury to dairy cattle resulting from "stray voltage" from milking equipment electrified by the power company. In applying section 402A, the Superior Court noted that, in addition to finding that electricity was a product, it was essential to the strict liability claim that plaintiff establish a sale of the electricity. Therefore, prior to the point at which electricity is sold to the customer, an action based upon section 402A strict liability cannot succeed. *Id.*

The "sale" of electricity, of course, does not occur in the traditional exchange of goods for currency. Its entry into the stream of commerce has been deemed to occur, generally, when the electricity leaves the transmission lines and passes through the customer's meter. *Schriner* at 188, 501 A.2d at

1133. In summation, the Superior Court stated: "[W]hile still in the distribution system, electricity is a service, not a product; electricity only becomes a product, for purposes of strict liability, once it passes through the customer's meter and into the stream of commerce." *Schriner* at 189, 501 A.2d at 1134. Since the complaint alleges that the scaffolding apparatus came into contact with high voltage overhead power lines, at which point the electricity had not been sold, the claim based upon section 402A strict liability must fail.

Familiar with the *Schriner* decision, plaintiff argues that the principles set forth therein are inapplicable to the instant matter. Specifically, he argues that defendant's electric poles and wires, not defendant's electricity, are the defective products as to which strict liability is to be applied. Plaintiff contends that, in *Schriner,* the Superior Court did not address the situation where, as in the instant action, the materials utilized to conduct the electricity are claimed to be defective.

According to plaintiff the question then becomes whether PP&L can be held strictly liable for 'the defective condition of its poles and wires under 402A. We believe the answer to this question is clearly "no," and return to the *Schriner* decision for authority on the matter. As our Superior Court stated:

"The cases in which liability for electricity is restricted to the traditional principles of negligence . . . confront only the situation where the electricity is being transmitted over high-tension wires for ultimate availability to the consuming public. The transmission of electricity, as well as the transmission of other similar type consumable goods, is a service being rendered by the utility to prospective purchasers. While being transmitted, liability is

controlled by standards of negligence and not strict liability, since any injury sustained as a result thereof is causally connected only to the transmission or transportation service and is unrelated to the ultimate sale of the product." *Schriner* at 188-9, 501 A.2d at 1134, quoting *Aversa v. Public Service Electric and Gas Company*, 186 N.J. Super. 130, 451 A.2d 976 (1982). Clearly, an allegation with respect to the defective maintenance of poles and wires is one which concerns the system by which electricity is transmitted or distributed. Liability, therefore, is controlled by standards of negligence as opposed to strict liability. Thus, the claim based upon section 402A must fail.

### ORDER

And now, January 8, 1990, the demurrer of defendant to counts II and IV of plaintiff's complaint, sounding in strict liability under the Restatement (Second) of Torts §402A, is sustained.