600 A.2d 553

OPTIMUM IMAGE, INC., Appellant,

v.

PHILADELPHIA ELECTRIC CO., Appellee.

Superior Court of Pennsylvania.

Argued July 17, 1991.

Filed Dec. 6, 1991.

Robert Hayes, Philadelphia, for appellant.

James C. Brennan, Media, for appellee.

Before POPOVICH, HUDOCK and MONTGOMERY, JJ.

HUDOCK, Judge:

Optimum Image, Inc., (Optimum), appeals from an order of the trial court transferring its claim to the Pennsylvania Utility Commission, (PUC), for investigation, review and report, and from the court's subsequent order denying its motion to amend its complaint and its motion for leave to file a *nunc pro tunc* demand for jury trial.

The facts may be summarized as follows: Optimum is a business engaging in retail and commercial photographic film developing. Optimum purchased sophisticated, computerized film developing equipment for use in its development processes. These machines permit Optimum to develop film quickly such that it could not only continue to service Optimum's commercial accounts but also develop a retail trade. Optimum opened in May, 1984, and subsequently moved to a larger store at Newtown Square in December of 1984.

On November 10, 1986, upon opening the store it was discovered that the film processing machines and the cash register were inoperative. The machines were tested and the electrical power being supplied to Optimum's place of business was tested. These tests revealed that the voltage of the electrical power being supplied to the premises was

subject to spikes and diminutions, line chattering and irregularities. Philadelphia Electric Company, (PECO), was, therefore, contacted and requested to identify and correct the unstable power supply. PECO responded by installing metering equipment. These meters revealed that PECO was delivering electrical service to Optimum which was indeed subject to voltage fluctuations. These power surges destroyed Optimum's cash register and damaged the film processing equipment. Moreover, the film processors would malfunction whenever the surges occurred.

Claiming that PECO refused to acknowledge and/or correct the problem, which continued unabated and recurred regularly, prior counsel for Optimum commenced a civil action against PECO. The single count complaint alleged that PECO wrongfully, negligently, carelessly and without reasonable cause delivered, over an extended period of time, unreasonably defective electrical power to Optimum's business premises. Optimum averred that PECO's negligence consisted both in failing to maintain adequate and reasonable equipment and otherwise providing defective service as well as its refusal to take adequate measures to correct these deficiencies as required by the Public Utility Law. The complaint further specified that the unstable power supply caused Optimum's equipment to malfunction, resulting in extensive losses. PECO filed an answer and new matter denying liability and Optimum filed its response to PECO's new matter.

On May 16, 1990, a pre-trial conference was held in the matter. At that time, Optimum advised the court of its dissatisfaction with the performance of its counsel. Consequently, the trial court entered an order on May 17, 1990, which continued the trial of the matter and granted Optimum the right to obtain new counsel. At the request of Optimum's new counsel a pre-trial conference was held before the trial court on September 5, 1990. During this conference, counsel for PECO suggested that a jury trial was never demanded and that the prior orders of court

scheduling the matter for jury trial were in error. In response, Optimum filed a motion for leave to file a *nunc pro tunc* demand for jury trial.

While preparing for trial, counsel for Optimum determined that the complaint previously filed was unsatisfactory and in need of amendment. It was determined that the complaint omitted crucial factual allegations and contract causes of action. Additionally, while pleading that the power supplied was unreasonably defective, the complaint did not contain a separate products liability count. Thus, Optimum filed a motion for leave to file an amended complaint. PECO did not respond to this motion.

Within weeks of receiving Optimum's supplementary answers to interrogatories and expert interrogatories, PECO filed a motion to transfer the matter to the PUC for investigation, review and report. In support of this motion, PECO argued that the PUC has primary jurisdiction over the controversy. On October 15, 1990, the trial court held oral argument on all three outstanding motions. As to the transfer motion, PECO conceded, contrary to its prior argument, that the trial court had primary jurisdiction over the dispute but that a report and review method was available with the PUC to utilize its expertise in the area. PECO then argued that the court could use the report of the PUC in subsequent proceedings on damages. As to Optimum's motion for a jury trial, PECO conceded that it would not be prejudiced by such a filing. PECO did not provide any substantive response to Optimum's motion to amend.

Despite these concessions, the trial court, ruling from the bench, stated that both of Optimum's motions should be denied and that the liability aspects of the dispute should be referred to the PUC. It executed from the bench PECO's proposed order as to the motion to transfer and thereafter issued orders denying Optimum's motions. Optimum timely filed notices of appeal from these orders which have been consolidated for disposition.

■ The first issue raised by Appellant is whether the trial court acted outside its authority in transferring the dispute to the PUC.[1] Alternatively, Optimum argues that if the trial court had authority to do so, it abused its discretion since transfer was not appropriate in the present case.

In regard to the jurisdiction of the PUC and a trial court's authority to transfer a dispute to that agency, we find our Supreme Court's decisions in *Feingold v. Bell of Pennsylvania*, 477 Pa. 1, 383 A.2d 791 (1977) and *Elkin v. Bell Telephone Co. of Pennsylvania*, 491 Pa. 123, 420 A.2d 371 (1980), instructive. In *Feingold*, the Supreme Court held that the courts of common pleas have original jurisdiction to hear suits against public utilities for damages arising from failure to provide adequate service. *Feingold*, 477 Pa. at 10, 383 A.2d at 795. In *Elkin*, the parameters of *Feingold* were further defined. *Elkin* was an action challenging the adequacy of a complainant's telephone service. In reversing this Court and sanctioning the actions of the trial court, our Supreme Court approved of a bifurcated procedure for certain situations, whereby the issue of liability is initially decided by the PUC, after which the court of common pleas considers the issue of damages, if appropriate:

[W]here the subject matter is within an agency's jurisdiction *and* where it is a complex matter requiring special competence, with which the the judge or jury would not or could not be familiar, the proper procedure is for the court to refer the matter to the appropriate agency. Also weighing in the consideration should be the need for uniformity and consistency in agency policy and the legislative intent.

*Elkin v. Bell Telephone Co. of Pennsylvania*, 491 Pa. at 134, 420 A.2d at 377. However, our Supreme Court cautioned against an abuse of this referral authority:

1. Optimum also discusses whether the transfer order is appealable. PECO does not contest the appealability of this order. PECO does, however, contest the appealability of the denial of Optimum's two other motions. These latter motions will be discussed below.

Courts should not be too hasty in referring a matter to an agency, or to develop a "dependence" on the agencies whenever a controversy remotely involves some issue falling arguably within the domain of the agency's "expertise."

\* \* \* \* \* \*

Where ... the matter is not one peculiarly within the agency's area of expertise, but is one which the courts or jury are equally well-suited to determine, the court must not abdicate its responsibility. In such cases, it would be wasteful to employ the bifurcated procedure of referral, as no appreciable benefits would be forthcoming.

*Id.*, 491 Pa. at 134–35, 420 A.2d at 377 (footnote omitted).

Thus, in *DeFrancesco v. Western Pennsylvania Water Co.*, 499 Pa. 374, 453 A.2d 595 (1982), the Supreme Court found that resolution of suits brought by business property owners in trespass and assumpsit against a water company alleging negligent failure to provide adequate water service to extinguish a fire neither depended upon the peculiar expertise of the PUC nor presented a question of agency policy, service owed to the general public, or a particular standard of safety or convenience articulated by the PUC. Thus, reversing the orders of this Court stating jurisdiction over the dispute was properly vested in the PUC, our Supreme Court remanded the consolidated cases to the trial court for disposition.

More recently, this Court, in *Schriner v. Pennsylvania Power & Light Co.*, 348 Pa.Super. 177, 501 A.2d 1128 (1985) held that an action brought by a farmer, for damages for loss of dairy cattle, against the electric company which electrified his milking equipment concerned a question as to whether the electric company failed to perform an affirmative duty, a question that required no specific knowledge and experience and thus fell within the ordinary business of the courts. The *Schriner* court also cited with approval to the trial court which stated:

[W]hile the expertise of a member of the PUC would be helpful, this area of litigation is no more complex than many others which come before the Court. With the assistance of expert testimony, there is no reason why a judge or jury could not become familiar with the alleged problem of stray voltage injury to dairy cattle.

*Id.*, 348 Pa.Superior Ct. at 183, 501 A.2d at 1131.

Thus, the issue becomes whether the complaint filed in the instant action is of such a nature that referral to the PUC was proper. Appellant's complaint provides, in pertinent part:

10. On or about November 9, 1986, PECO suddenly, and without prior notice to [Appellant], wrongfully, negligently, carelessly, and without reasonable cause, caused or permitted a surge or surges of electrical power through the electrical lines and into [Appellant's] business premises causing severe damages to the computer photographic processing equipment at the premises.

11. Since November 9, 1986, in spite of numerous complaints, the electrical power supply of [Appellant] has been the subject of surges and diminution and/or loss of power which have and continue to interfere with [Appellant's] equipment and its business.

12. The negligence, carelessness and lack of reasonable care on the part of PECO as mentioned above consists of the following:

(a) [PECO] failed to maintain adequate and reasonable equipment, including equipment to protect [Appellant] from variations in the flow of electrical power and the complete loss of power.

(b) [PECO] failed to take adequate action to investigate and correct deficiencies in its equipment and supply of electrical power which caused harm to [Optimum].

(c) [PECO] allowed the interference with electrical power to [Optimum] to continue for an unreasonable length of time without due cause or justification.

Optimum also states that, on more than one occasion, the electrical power supplied by PECO exceeded the ten percent variation allowed by PECO's tariff filed with the PUC. In addition, Optimum, through answers to expert interrogatories, alleges that the power with which it was supplied was substandard and outside the regulatory requirements and that the problem it experienced was not investigated with the proper equipment. For example, in its memorandum in support of matters complained of on appeal, Optimum states that controversy would include such issues as whether "spikes" appearing on a recording voltage meter PECO installed at its place of business were the result of PECO's improper installation or actually reflected substantial and extended voltage increases. In response, PECO contends that it at all times provided electrical power in compliance with its tariff filed with the PUC and otherwise furnished and maintained adequate, efficient, safe and reasonable services and facilities to Optimum.

■ Upon careful review of the record, we conclude that the expertise of the PUC is required to decide the present dispute. Matters relating to tariff, necessity of equipment, deposits and use of various types of services are within the particular expertise of the PUC. *Morrow v. Bell Telephone Co. of Pennsylvania,* 330 Pa.Super. 276, 479 A.2d 548 (1984). The Public Utility Law of Pennsylvania provides that the PUC prescribes, as to service and facilities, just and reasonable standards, classifications, regulations and practices to be furnished, imposed, observed and followed by any and all public utilities. Further, the law provides that the PUC may prescribe adequate and reasonable standards for the measurement of quantity, quality, pressure, initial voltage or other condition pertaining to the supply of service. In addition, the statute provides that the PUC may prescribe reasonable regulations, specifications and standards to secure the accuracy of all meters and appliances for measurement. Act of July 1, 1978, P.L. 598, No. 116;

66 Pa.C.S.A. § 1504.  Faced with the averments of the complaint, and the allegations raised in the answers to expert interrogatories, the trial court, in its discretion, availed itself of the bifurcated procedure of referring the liability part of Appellant's claim to the PUC.  Unlike the claims in *DeFrancesco* and *Schriner, supra,* we find these allegations encompass more complex, technical claims and that the alleged problem with the supply of electrical power continued over an extended period of time.  Optimum not only takes issue with the quality of electric supplied to its premises but also the equipment used to measure same.  Thus, we hold that the referral of the matter to the PUC was proper.

■ Optimum's remaining claims on appeal are that the trial court erred in denying its motion to amend its complaint and its motion for leave to file a *nunc pro tunc* demand for jury trial.  PECO contends that the order denying these motions is interlocutory in nature and therefore not properly before this Court.  We agree.

In *Barr v. General Accident Group Insurance Company,* 360 Pa.Super. 334, 520 A.2d 485 (1987), this Court considered the appealability of an order denying amendment of a complaint:

> In ascertaining what is a final appealable order … we must look beyond the technical effect of the adjudication to its practical ramification.  The finality of an order is a conclusion which can be reached only after an examination of its ramifications.  When an order so restricts the pleader as to virtually put him out of court on the cause of action he seeks to litigate, it is a final appealable Order.

*Id.,* 360 Pa.Superior Ct. at 344, 520 A.2d at 490 (citations omitted).  An order is also deemed final if it precludes a party from presenting the merits of his or her claim to the trial court.  *Lansdowne v. G.C. Murphy Co.,* 358 Pa.Super. 448, 517 A.2d 1318 (1986).

The order rendered in the present case did not have the practical effect of placing Optimum out of court as to a cause of action against PECO. Optimum concedes it in its brief that it wished to add a contract claim and strict liability claim to its complaint because it was easier to prove. (Optimum's Brief at p. 6). By these assertions, Optimum admits that it merely wished to add alternative theories of recovery. Thus, it is still able to proceed with its claim against PECO. As we do not find that Optimum's requested amendment to its complaint would add a cause of action sufficiently distinct and separate from the cause of action already sued upon, we conclude that the denial of Optimum's motion to amend is interlocutory. We therefore quash this part of Optimum's appeal.

■ Finally, we conclude that the order denying Optimum's motion for leave to file a *nunc pro tunc* demand for jury trial is interlocutory as it in no way affects Optimum's ability to pursue their cause of action. To consider the appeal of this order, at this time, would be to create the piece-meal litigation which was to be prevented by ruling matters interlocutory. *Sweener v. First Baptist Church of Emporium, Pa.*, 516 Pa. 534, 533 A.2d 998 (1987). Thus, we also quash this part of Optimum's appeal.

The order referring this case to the PUC is affirmed. The appeal from the order denying Optimum's motion to amend its complaint and its motion for leave to file a *nunc pro tunc* demand for jury trial is quashed.