ELGIN AIRPORT INN, INC., Plaintiff-Appellant, *v.* COMMONWEALTH
EDISON COMPANY, Defendant-Appellee.

Second District   No. 79-431

Opinion filed September 16, 1980.

SEIDENFELD, P. J., dissenting.

Alfred Y. Kirkland, Jr., of Brady, McQueen, Martin, Callahan & Collins, of
Elgin, for appellant.

Puckett, Barnett, Larson, Mickey, Wilson & Ochsenschlager, of Aurora, for
appellee.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

Elgin Airport Inn, Inc., brought an action against Commonwealth Edison Company for damage to the plaintiff's air conditioning equipment caused by low voltage electricity. The complaint was in four counts. Count I was based on the theory of *res ipsa loquitur*, count II on ordinary negligence, count III on violation of section 32 of "An Act concerning public utilities" (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 32) which requires the utility company to furnish "such service instrumentalities, equipment and facilities as shall promote the safety, health, comfort and convenience of its patrons, employees, and public and as shall be in all respects adequate, efficient, just and reasonable." Count IV was based on strict liability for damage done to the plaintiff's property by Commonwealth Edison Company in furnishing an unreasonably dangerous product—low-voltage electricity.

After a bench trial, the trial court found in favor of the defendant on each of the four counts of the complaint and rendered judgment accordingly.

It appears from the testimony that on November 3, 1976, while Commonwealth Edison Company was engaged in the routine testing of the line which serviced Elgin Airport Inn, the plaintiff's service was switched to an alternate line and then switched back to the regular line. Due to a broken casting in the switching mechanism, one circuit failed to close when the current was switched back to the regular lines and this caused single phase electrical current to be transmitted to the plaintiff's premises which, because of the low voltage, burned out several of the air conditioning motors. The testimony of James Gordon, Commonwealth Edison's employee, was that the casting which failed was not readily discernible and the defect would not be ascertained by the usual inspection. The switching mechanism containing the defective part had been tested some five times over as many years and found to be in good operating condition. In fact, this switch had been tested a little more than a month before the incident in question when it was cleaned. No defect was observed at that time. The line was switched to an alternate line at 5:37 p.m. on the day in question and the abnormal condition of low voltage was not discovered until 5:42 p.m., when it was immediately corrected by switching back to the original line. From the testimony on both sides it would appear certain that the plaintiff's air conditioning equipment was damaged by receiving abnormally low voltage during this five-minute interval.

It is clear that under the circumstances there was not sufficient evidence to sustain the allegation of negligence under count II. So far as appears from the testimony, Commonwealth Edison had taken precautions to avoid a breakdown in service by testing the line in question at reasonable intervals, considering the thousands of lines to be tested, and

this particular line had been in satisfactory condition a month or so before the switching failure occurred. While a five-minute delay in switching off the defective current was long enough to do considerable damage, it does not seem an inordinately long time to discover and correct a defect in a complicated and extensive transmission system. The defective part was not apparent to visual observation, and we cannot say on the basis of the evidence adduced that Commonwealth Edison was negligent in not discovering this small defect before the incident occurred.

■■ As to the count based on *res ipsa loquitur*, there is no inference of negligence arising from the occurrence itself because the cause of the failure is definitely known. We do not have to speculate as to the immediate cause as is necessary where *res ipsa loquitur* is properly invoked. (See *O'Rourke v. Marshall Field & Co.* (1923), 307 Ill. 197.) Since the exact circumstances of the failure and exact cause are known, we are not justified in ascribing negligence to the defendant on the basis that the defendant had exclusive control of the instrumentality or device and the accident could not have occurred without some negligence on its part. Here, since we know the exact facts, we must test defendant's negligence with reference to those known facts rather than under the fault-oriented inferences of *res ipsa loquitur*. While the theory that *res ipsa loquitur* disappears as soon as there is an allegation of specific negligence (*O'Rourke v. Marshall Field & Co.*, (1923), 307 Ill. 197; *Bollenbach v. Bloomenthal* (1930), 341 Ill. 539) was repudiated in *Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, in the case before us the *explanation* of the failure as being due to an imperceptible break in a small casting which impaired the switching mechanism was clear and convincing and was not disputed by the plaintiff. Under these circumstances, there being a logical, undisputed explanation for the failure, the inference of negligence arising out of a lack of any satisfactory explanation is not valid and *res ipsa loquitur* has no place. (See Prosser, Torts §40, at 233-34, (4th ed. 1971).) In this case, we cannot discard the actual facts in order to invoke an alternate theory of liability under which negligence is assumed from the implications of the result.

■■■ Nor do we see any foundation for liability under the Public Utilities Act. Section 32 of that Act, invoked by the plaintiff, states a general public policy whereby public utilities are held to a high standard of public service, but we do not think it was designed to redress, by way of civil damages, a temporary deficiency in service to an individual caused by equipment failure in the ordinary course of operations. This section of the Public Utilities Act relates to the safety, health and convenience of the public and we agree with the trial court's finding that there was no violation of this statute under the circumstances disclosed by the testimony.

This leaves for consideration count IV of the complaint, founded on strict liability. In *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, the

supreme court announced the basis of strict liability in tort and adopted the doctrine which coincided with the view expressed in section 402A of the Restatement (Second) of Torts (1965). That section provides:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. * * *."

Thus, it is necessary in establishing strict liability to show that the offending thing or substance is a "product" and that it was in a defective condition making it unreasonably dangerous to the user when it left the control of the manufacturer or supplier. Because electricity is intangible, it has consistently been argued by strict liability defendants in cases involving injury by electricity that the intangible force of electrical current is not a "product" within the meaning of section 402A and, indeed, no Illinois decision we are aware of had expressly recognized it as such until the case of *Dubin v. Michael Reese Hospital & Medical Center* (1979), 74 Ill. App. 3d 932. In *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, our supreme court assumed "arguendo" that electricity was a product but even so held strict liability did not apply in that case because (a) the electricity was still in the manufacturer's control when the accident occurred and (b) the electricity was not in any way "defective" even if it conceded that the wires carrying it were too close to the ground. In the *Dubin* case, the plaintiffs alleged they had been exposed to X rays by the defendant, that such X-ray radiation was not in a reasonably safe condition for its intended purpose and that the defendant had failed to warn them of the dangerous tendency of such radiation to cause tumors and other abnormalities in human beings. In the course of reaching a conclusion as to whether or not strict liability is applicable to X radiation, the court considered whether electricity was a "product" within the meaning of section 402A and expressly held that it was. The court pointed out that electricity had been held by our supreme court to be " 'a valuable commodity, bought and sold like other personal property. It may be transported from place to place. While it is intangible, it is no less personal property and is within the larceny statute.' (*Menagas*, 367 Ill. 330, at 338.)" (*Dubin*, 74 Ill. App. 3d 932, 941.) It is contended by the defendant here that the pronouncement in *Dubin* was obiter dicta inasmuch as whether or not electricity is a product was not the ultimate issue before the court. However, it seems a logical necessity to the holding that X radiation is a product, since X radiation is derived from electricity. Our neighboring states of Indiana, Michigan and Wisconsin also have consid-

ered the question whether strict liability is applicable to claims for injuries or deaths by electricity. (See *Petroski v. Northern Indiana Public Service Co.* (Ind. App. 1976), 354 N.E.2d 736; *Williams v. Detroit Edison Co.* (1975), 63 Mich. App. 559, 234 N.W.2d 702; *Ransome v. Wisconsin Electric Power Co.* (1979), 87 Wis. 2d 605, 275 N.W.2d 641.) In none of these cases did the court reject the concept of strict liability on the basis that electricity was not a "product." While the *Williams* opinion stated that "[e]lectricity is a service rather than a 'good,' " (*Williams*, 63 Mich. App. 559, 564, 234 N.W.2d 702, 705), it held that "the doctrine of implied warranty in tort applies to a 'products' liability case involving electricity" (*Williams*, 63 Mich. App. 559, 565, 234 N.W.2d 702, 706), and rejected liability on the ground, not that the electricity was not a product but that it had not been released into the stream of commerce when the injury occurred. *Petroski* specifically recognized that electricity is a product for strict liability purposes but like *Williams* and *Genaust* held that strict liability did not apply because the electricity had not been put into the stream of commerce but was still in the utility high voltage wires when the accident occurred. *Ransome* specifically recognized that electricity is a product under section 402A and held the utility company liable for the injury done when its high-voltage electricity entered into a home due to a missing insulator and broken fuse on its transmission line. This was clearly a strict liability case since the damage which permitted the high voltage to enter the plaintiff's home had been caused by a previous electrical storm and specific negligence was not involved.

As noted in the *Dubin* case, most of the decisions involving injury or damage by electricity have not expressly considered or have not rested their decision on whether it was a product but have found reasons for their decisions not requiring that determination. In the case before us, however, that question is of the essence for, unlike the cases involving contact with high voltage lines where the electricity is still within the control of the utility company, we are faced here with injury done to the consumer's property by electrical current after it was delivered to the consumer. That the electrical current actually delivered to the consumer was not in the form required for normal usage and was dangerous to its appliances is clearly established by the evidence, thus is clear that if the electricity which damaged the plaintiff's appliances was a "product," it was a product in "a defective condition unreasonably dangerous to the user or consumer or to his property." Section 402A(1) Restatement (Second) of Torts(1965).

■■ Having in mind that electrical energy is artificially manufactured, can be measured, bought and sold, changed in quantity or quality, delivered wherever desired and has been held by our supreme court to be personal property whose unlawful asportation is larceny, we are of the opinion that it is a product within the meaning of section 402A. It is manufactured and is

sold by the manufacturer to the general public and we see no reason not to regard it as a product. It is, of course, not conceded by the defendant utility that the electrical energy it supplied in this instance was defective. It was admitted, however, by the defendant that the single-phase current was unreasonably dangerous to the plaintiff's appliances in the form in which it was delivered to the premises and that it was not in the expected and required three-phase condition expected and required for proper operation of the air conditioning appliances. There is agreement by both parties that the single phase current delivered in this instance was responsible for the destruction of the plaintiff's air conditioner motors. The necessary elements for the imposition of strict liability therefore have been established.

No other case has come to our attention where the doctrine of strict liability was invoked to recover for damage done to appliances by an unintended transmission of single-phase current to appliances designed for the use of three-phase current. Yet the elements for establishing strict liability are clearly present, and the lack of precedent has no bearing on the merits of the case. A Commonwealth Edison employee testified that the single phasing occurred by reason of the failure of a small casting in a switching mechanism in the transmission line and the failure was accidental. Moreover, we have found the condition was not caused by defendant's negligence. However, we find, under the special and limited circumstances of this case, that the trial court erred in entering judgment in favor of the defendant and against the plaintiff on count IV of the complaint on the ground that "there was no evidence or insufficient evidence of any defect in the electricity supplied plaintiff by defendant which is unreasonably dangerous * * *." As we have indicated, we believe the admitted facts clearly established that the electrical current supplied by Commonwealth Edison Company to the plaintiff was defective in being single-phase current and undoubtedly dangerous to the usual electrical appliance motors. The trial court, therefore, erred in entering judgment in favor of defendant on count IV of the complaint.

There was evidence that the motors in question were equipped with a device which was designed to switch them off in the event that single phasing occurred and that this device did not operate. We do not accept defendant's argument that the presence of this safety device indicates that the plaintiff anticipated low voltage might be expected to occur on the defendant's transmission lines, therefore it was a normal and expected thing. It was recognized as a danger to be guarded against, but the plaintiff did not lose its claim because it took such measures as it could beforehand.

We express no opinion as to damage caused by the low voltage resulting from momentary peak demand, which simply reduced the normal volume of electricity available, sometimes referred to as "brownout."

In this opinion, we consider only the condition known as "single phasing" and hold it to be an unreasonably dangerous condition creating strict liability on Commonwealth Edison Company as a seller thereof under section 402A of the Restatement (Second) of Torts (1965).

The judgment of the circuit court of Kane County is affirmed as to counts I, II and III and reversed as to count IV of the complaint and the cause is remanded to the trial court for ascertainment of damages in accordance with this opinion.

Judgment affirmed as to counts I, II and III; judgment reversed and remanded as to count IV.

NASH, J., concurs.

Mr. PRESIDING JUSTICE SEIDENFELD, dissenting:

Although I concur in the determination that electricity is a product, I must respectfully dissent from the remainder of the opinion which deals with products liability. Our products liability law is based upon section 402A of the American Law Institute's revised Restatement of the Law of Torts. (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 621.) Section 402A requires a product to be "unreasonably dangerous to the user or consumer" before strict liability applies. Comment i defines "unreasonably dangerous" as "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." The Illinois cases bear out this emphasis on consumer expectations as the basis of unreasonableness. (See *Dunham v. Vaughan & Bushnell Mfg. Co.* (1969), 42 Ill. 2d 339, 343.) "The fact that a condition is dangerous does not necessarily mean that it is an unreasonably dangerous condition." (*Collins v. Musgrave* (1975), 28 Ill. App. 3d 307, 311.) The gist of the action is whether the product performs as expected in light of its nature and function. *Neal v. Whirl Air Flow Corp.* (1976), 43 Ill. App. 3d 266, 271; *Becker v. Aquaslide 'N' Dive Corp.* (1975), 35 Ill. App. 3d 479, 490; *Troszynski v. Commonwealth Edison Co.* (1976), 42 Ill. App. 3d 925, 929.

The danger in this case is the insufficient power supplied to the plaintiff's air conditioner motors. The evidence in this case indicates that the motors were equipped with automatic shutoffs in case of drops of voltage but that these apparently malfunctioned. The protective devices are required by the National Electric Code to be installed on air conditioning motors. This is strong evidence that drops in power are within the contemplation of the ordinary consumer with knowledge of the product's characteristics. This is apparently what the trial court found, and its findings should not be overturned unless they are against the manifest weight of the evidence.

The case most factually similar is the Wisconsin case of *Ransome v. Wisconsin Electric Power Co.* (1979), 87 Wis. 2d 605, 275 N.W.2d 641. In it, the court held an electric company liable for damages caused by fire which started when a transformer which had been damaged in a storm a few days earlier malfunctioned, sending 4,800 volts of electricity into the house. In finding the voltage to be unreasonably dangerous the court relied on the fact that ordinary homes are protected by circuit breakers with a maximum voltage rating of 600 volts. A variation up to 600 volts was thus within the consumer's expectation. One of 4,800 volts was not, and in fact the circuit breakers were useless in preventing the power surge of such magnitude. Our case is the reverse of *Ransome*: The voltage defect is within the range covered by the consumer's protective devices. Therefore, in our case, the plaintiff should not recover.