KATHLEEN D. CARBONE ET AL. *v.* CONNECTICUT LIGHT AND POWER COMPANY ET AL.

SUPERIOR COURT      JUDICIAL DISTRICT OF      FILE NO. 275930
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed July 20, 1984

*Furniss & Quinn,* for the plaintiffs.

*Carmody & Torrance,* for the named defendant.

*Halloran, Sage, Phelon & Hagarty,* for the defendant C & G Electric Company.

WAGNER, J. This is an action for damages resulting from a fire in the plaintiffs' home allegedly caused by a "surge of high voltage electric current" which overwhelmed the electrical service panel causing an arcing condition and the fire. The first three counts of the complaint are directed to the defendant, Connecticut Light and Power Company (CL&P), counts one and three sounding in negligence, the second count sounding in product liability, the plaintiffs alleging that the "defective condition" of the electric current furnished by

CL&P "breached the defendant's warranty that the electric power it sold the plaintiffs would be safe for home use."

CL&P moves to strike the second count on the ground that it fails to state a cognizable cause of action since the furnishing of electricity is not, as a matter of law, (1) an ultra-hazardous activity or (2) a "product" within the meaning of the products liability statute. General Statutes § 52-572m et seq.

The plaintiffs have not pressed the claim that delivery of electricity to a home is "ultra-hazardous" and we do not give this claim serious consideration.

In considering whether electricity is a "product" within the products liability statute, the issue is not so much semantic, but rather the underlying social policy as to whether the doctrine of strict liability, which is applicable to an action under the products liability statute, should be made available to one sustaining damage as a result of excessive electric voltage entering his home in an action against the power company.

We find nothing in the products liability statute or in our Supreme Court decisions which is decisive on the question of the applicability of the strict liability doctrine to the situation described.

Connecticut decisions cited by CL&P, e.g., *Citerella* v. *United Illuminating Co.,* 158 Conn. 600, 266 A.2d 382 (1969), and *Plourde* v. *Hartford Electric Light Co.,* 31 Conn. Sup. 192, 326 A.2d 848 (1974); deal with accidents occurring from contact with high voltage transmission lines. They are not controlling in the present case because the electricity involved had not been released into the "stream of commerce." Or, put another way, there was clearly no product, at that point in time, which had been sold (in the words of General Statutes § 52-572m [a], defining "product seller") for "resale or

for use or consumption." *Senderoff* v. *Housatonic Power Service Co.*, 147 Conn. 18, 156 A.2d 517 (1959), deals with a claim for property damage resulting from interrupted power service.

Some superior court judges have concluded that electricity was more in the nature of a "service" than a "product" and refused to extend the doctrine of strict liability. We do not take the definition of "property" in the penal code, General Statutes § 53a-118 (a) (1) to be determinative of this point, since on one hand electricity is held to be "property" but in the "supplying of . . . [electricity] to premises from an outside source by means of wires, pipes, conduits or other equipment shall be deemed a rendition of a service rather than a sale or delivery of property." If electricity is "property," it could be a "product," even though the supplying of that product is a "service." In any event, the applicability of a penal code definition to the products liability statute may be inapposite. Moreover, those rulings were made prior to the statutory enactment of the products liability law in 1979, General Statutes § 52-572m et seq., which is a modified version of the Model Uniform Product Liability Act, which itself is based on 2 Restatement (Second), Torts § 402A.

In that same year, the Wisconsin Supreme Court decided *Ransome* v. *Wisconsin Electric Power Co.*, 87 Wis. 2d 605, 275 N.W.2d 641 (1979), a case with facts almost identical with the present case, holding electricity delivered to a home and measured by a meter to be a "product" and applying the doctrine of strict liability. *Ransome* has been followed by the courts in New Jersey; *Aversa* v. *Public Service Electric & Gas Co.*, 186 N.J. Super. 130, 451 A.2d 976 (1982); and Illinois; *Elgin Airport Inn* v. *Commonwealth Edison Co.*, 88 Ill. App. 3d 477, 410 N.E.2d 620 (1980). Six cases cited by CL&P in other states as opposing *Ransome* all deal with high voltage transmission line situations. It would

appear, therefore, that most recent decisions in other states hold a public utility strictly liable in situations where the electricity claimed to be defective has been released into the stream of commerce. 63 Am. Jur. 2d, Products Liability § 217.

A motion to strike admits for its purposes all the facts well pleaded in the complaint. If a count contains among its allegations a valid cause of action, a motion to strike cannot be sustained. *Rossignol* v. *Danbury School of Aeronautics, Inc.*, 154 Conn. 549, 227 A.2d 418 (1967); *Plourde* v. *Hartford Electric Light Co.*, 31 Conn. Sup. 192, 326 A.2d 848 (1974).

We cannot rule as a matter of law that the second count of the complaint does not state a proper cause of action in alleging that a large surge of electricity which entered the plaintiffs' home was a "defective condition in defendant's product."

The motion to strike is denied.