[No. A032061. First Dist., Div. Four. Nov. 10, 1986.]

TIM C. THIBOS, Plaintiff and Appellant, v.
PACIFIC GAS AND ELECTRIC COMPANY, Defendant and
Respondent.

**COUNSEL**

Marchmont J. Schwartz, Margery Q. Lee, Michael P. McCabe, Trembath, McCabe, Schwartz, Evans & Levy and Bryce C. Anderson for Plaintiff and Appellant.

Robert L. Bordon, Steven P. Burke and David W. Anderson for Defendant and Respondent.

**OPINION**

**ANDERSON, P. J.**—Tim C. Thibos (appellant) was struck by an automobile at approximately 8:45 in the evening while crossing Clayton Road in Concord, Contra Costa County. Just after appellant had stepped off the curb a street light, installed and maintained by respondent Pacific Gas and Electric Company (PG & E), blew out—leaving the roadway dark. Appellant filed a complaint for damages against PG & E, the driver of the car and the City of Concord; however, the cases against the latter defendants were dismissed prior to trial. The action, therefore, proceeded against PG & E alone on theories of premises liability and general negligence.

On the first day of his jury trial (Feb. 13, 1985)—approximately two and one-half years after the complaint was filed (Aug. 9, 1982)—appellant sought to amend his complaint by "check[ing] off on this form complaint the box that says product liability." Counsel for PG & E strongly opposed the motion arguing (1) if a product liability action had been asserted he would have conducted discovery differently and cross-complained against the manufacturer of the defective bulb, and (2) based on the recent decision in *United Pacific Ins. Co.* v. *Southern Cal. Edison Co.* (1985) 163 Cal.App.3d 700

[209 Cal.Rptr. 819],[1] no action in strict liability could be brought against the public utility. The trial court expressed concern over the timeliness of appellant's motion to amend, then denied the motion based on its reading of *United Pacific*.

At the close of the plaintiff's case appellant renewed his motion to amend the pleadings—this time to conform to proof. Counsel for PG & E again objected and the court denied the motion. The jury returned a special verdict finding PG & E not negligent, so appellant took nothing on his complaint.

Following judgment appellant filed a motion for a new trial arguing once again that the court erred in denying his motion to proceed on a product liability theory. Appellant argued specifically that a case decided after the jury returned its verdict—*Pierce* v. *Pacific Gas & Electric Co.* (1985) 166 Cal.App.3d 68 [212 Cal.Rptr. 283][2]—contradicted the trial court's conclusion that such an action was unavailable against a public utility. After argument the court denied the motion for a new trial.

██ Appellant claims the judgment below must be reversed because of the trial court's erroneous denial of his motion(s) to amend. We disagree based on our conclusion that within the undisputed facts of this case, no legally cognizable action in strict liability was available against PG & E. Specifically, no product was ever placed on the market.

### DISCUSSION

As stated by Benjamin Green, illumination engineer for PG & E, the agreement between PG & E and the City of Concord for the providing of street lighting in the area of the accident was governed by a document entitled schedule No. LS-1.[3] The lights on Clayton Road fell under class "A," a category in which the "Utility *owns and maintains* luminaire, control facilities, support arm, and service wiring on its existing distribution pole. . . ." (Italics added.) In a listing of "special conditions," the schedule recites "Ownership: All facilities installed under this schedule except for the Class 'C' customer-owned pole or post, support arm and foundation shall vest *in the Utility.*" (Italics added.) Under "maintenance," the schedule specifies "The Utility shall exercise reasonable care and diligence in maintaining *Utility-owned facilities.*" (Italics added.)

---

[1] For some reason this case is referred to at points in the record and in appellant's briefs as "United Pacific Insurance Company versus Santa Barbara Cable TV."

[2] The jury rendered its verdict on February 22, 1985. *Pierce, supra,* was filed on March 26, 1985.

[3] Though called by Green a "rate schedule," this is a three-page contract that sets forth the respective rights and obligations of the parties, including the initial and subsequent terms of service.

 The law of product liability in this state is summarized in *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 62 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049], as follows: "A manufacturer is strictly liable in tort when *an article he places on the market,* knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." (Italics added.) In *United Pacific Ins. Co.* v. *Southern Cal. Edison Co., supra,* 163 Cal.App.3d at pp. 705-706, a case in which a fire was caused by the crossing of two power lines, the court was asked to consider whether the product liability doctrine was applicable to facilities used by a public utility for the transmission of electricity. The court found that it was not, reasoning that since the utility "simply used its own facilities to transmit its own energy for sale down the line," the transfer of property or some property right essential to the concept of marketing—of placing a product in the stream of commerce—was missing. (*Id.,* at p. 708.) The same conclusion is dictated in this case, where it is indisputable that PG & E made use of its own equipment to provide the City of Concord with lighting.

Appellant argues at length that PG & E put its lighting system in the stream of commerce because "the contractual arrangement that existed between the City of Concord and PG & E at the time of the accident was that of a lessor-lessee." We find to the contrary that schedule No. LS-1, class "A" reserves all proprietary rights in favor of the utility and bestows none on the purchaser. It is a contract for "street and highway *lighting*" (italics added) and consistently refers to what is being provided as a *service.* Appellant's arguments to the contrary amount to an attempt to inject ambiguity into a patently unambiguous agreement.

Appellant also contends that the doctrine of strict product liability has been made directly applicable to the facts of this case by the recent decision in *Pierce* v. *Pacific Gas & Electric Co., supra,* 166 Cal.App.3d at pp. 82-84. To the contrary, we find that *Pierce* supports the position that no product was ever placed on the market. In *Pierce,* the plaintiff was injured when electricity meant to be delivered to her home at between 120 and 240 volts was sent in at 7,000 volts due to a faulty transformer. (*Id.,* at p. 74.) The court upheld the plaintiff's right to sue on a strict liability theory, reasoning that electricity delivered to homes and businesses is a "product." (*Id.,* at p. 82.) However, its holding was strictly limited to situations like residential hookups, "where the electricity is actually in the 'stream of commerce,' and expected to be at marketable voltage." (*Id.,* at p. 84.)

More instructive for purposes of this case is the *Pierce* court's comment about the line transformer which caused the 7,000-volt power surge. It held that since PG & E had not manufactured the device, "PG & E was, in

essence, a consumer rather than a manufacturer of the transformer, and *cannot be held strictly liable in tort for the transformer's defects per se.*" (*Pierce* v. *Pacific Gas & Electric Co., supra,* 166 Cal.App.3d at p. 76, italics added.) This is highly significant since here it was never disputed that PG & E put together its lighting system "by *combining* various electrical component parts that it had purchased in bulk *from different manufacturers. . . .*" (Italics added.) In fact, appellant's claim of negligence was based on PG & E's failure to take action once it discovered that *high-pressured sodium bulbs* it was installing in its fixtures were burning out prematurely; there was no claim that the *electricity* powering the lights was irregular. Thus, PG & E could no more have been held strictly liable here for these defective bulbs than it was in *Pierce* for the faulty transformer.

An action based on strict product liability was unavailable to appellant on the facts of this case. If the trial court erred in denying the motion to amend, such error was harmless. The court properly denied the motion for a new trial.

The judgment is affirmed.

Poché, J., and Channell, J., concurred.

A petition for a rehearing was denied December 2, 1986, and appellant's petition for review by the Supreme Court was denied February 5, 1987. Panelli, J., did not participate therein. Low, J.,* participated therein.

---

*Assigned by the Acting Chairperson of the Judicial Council.