[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
The plaintiff brings this action against the defendant Northeast Utilities. As owners of a dairy farm in the town of Suffield they were engaged in the business of breeding, raising and selling regional pedigree Holstein cattle.
It is the plaintiff's claim that on or about July 21, 1991 at approximately 4:50 p. m. electricity came in contact with the plaintiff's cattle and that the cattle suffered injures.
On April 20, 1993 the defendant filed a motion to strike, which asks this court to strike counts two and three of the plaintiff's complaint. Count Two seeks to impose strict liability upon the defendant claiming that it is engaged in a ultra-hazardous activity and should be strictly liable for the alleged damages to the cattle. Count Three claims that electricity is a product and seeks damages under statutory product liability.
The plaintiff's second count is based on the doctrine of absolute or strict liability imposed on one who engages in an ultra-hazardous activity. Under this doctrine, a plaintiff is not required to show that his loss was caused by the defendant's negligence. It is sufficient to show only that the defendant engaged in an ultra-hazardous activity that caused the defendant's loss. The doctrine has traditionally been applied in cases involving blasting and explosives. See D. Wright J. Fitzgerald, Connecticut Law of Torts (3d Ed.) § 122. Green v. Ensign-Bickford Co., 25 Conn. App. 479 (1991). Connecticut's sole extension beyond blasting cases is to damage from a concussion resulting from pile driving. Caporalev. C. W. Blakeslee Sons, Inc., 149 Conn. 79, 85, 175 A.2d 61
(1961).
The plaintiff's in their complaint state:
 6. There existed inherent risks of harm in the supply, transmission and/or delivery of electricity to the Plaintiffs' premises by the Defendant which CT Page 12249 risks of harm could not have been eliminated by the use of ordinary and reasonable care.
 7. The supply, transmission and/or delivery of electricity to the Plaintiffs' premises by the Defendant constituted an ultra-hazardous activity as a matter of law, and the Defendant is thereby strictly liable to the Plaintiffs for the injuries and losses complained of.
The issue before this court is whether electricity can be defined as ultra-hazardous activity. Section 519 and 520 of 3rd Restatement (Second), Torts, address the doctrine of strict liability for ultra-hazardous activities. Section 519 provides in pertinent part: "(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." Comment (d) of the Restatement points out that the liability of § 519 is not based on any intent of the defendant to do harm to the plaintiff; rather, it arises out of the abnormal danger of the activity itself, and the risk that it creates of harm to those in the vicinity. "It is founded upon a policy of law that imposes upon anyone who for his own purposes creates an abnormal risk of harm to his neighbors, the responsibility of relieving against the harm when it does in fact occur." Id.
The factors for a court to consider in determining whether an activity is abnormally dangerous are listed in § 520 of the Restatement as: "(a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results form it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes." 3 Restatement (Second), Torts § 520.
The plaintiff asserts that § 520 requires this court to conclude that the supply transmission and/or delivery of electricity is an abnormally dangerous activity requiring the defendant to be strictly liable for any injuries stemming from its business. It is important to note that comment (f) of § 520 clearly states that all of the factors need not be CT Page 12250 present for an activity to be considered abnormally dangerous. Comment (f) to § 520 provides:
 In determining whether the danger is abnormal, the factors listed in Clauses (a) to (f) of this Section are all to be considered, and are all of importance. Any one of them is not necessarily sufficient of itself in a particular case, and ordinarily several of them will be required for strict liability. On the other hand it is not necessary that each of them be present, especially if others weigh heavily.
A review of Connecticut cases by this court fails to find any case that sustains the plaintiffs position. The Connecticut Supreme Court has twice rejected the imposition of strict liability on electric utility company. See Serderottv. Housotonic Public Service Co., 147 Conn. 18, (1949) andCiterella v. United Illuminating Co., 158 Conn. 600 (1967).
A review of lower court cases in Connecticut indicates a consistent rejection of the theory of strict liability. InPlounde v. Hartford Electric Light Co., 31 Conn. Sup. 192, (1974), Speziale, J., firmly rejected absolute liability. See also: Klotz v. CLP Super. Ct. J.D. Fairfield, No. 0041767 (1979); M. Monteiro Sons, Inc., v. Conn. Light Power Co., Super. Ct. J.D. Danbury, No. 030234 (1991).
Other courts have held that whether electricity or a piece of electrical equipment is unreasonably dangerous depends on the reasonable expectations of the ordinary consumer concerning the characteristics of that type of product. Beacon Bowl, Inc. v. Wisconsin Elec. Power Co.,176 Wis.2d 740, 501 N.W.2d 788, 809 (1993) ("[E]lectricity is defective and unreasonably dangerous when it is in a condition not contemplated by the ultimate consumer and unreasonably dangerous to that consumer.") Wyrulec Co. v. Schutt,866 P.2d 756, 762 (1993) ("The standard [for electric companies] is correctly stated as ordinary or reasonable care. . . . " (Internal quotation marks omitted.)); Cerretti v. Flint Hills Rural Elec. Co-op Ass'n,251 Kan. 347, 335, 837 P.2d 330 (1992) ("The degree of care required of distributors of electricity is . . . to guard against contingencies which can be reasonably foreseen and anticipated, but such distributors are liable for occurrences which cannot be reasonably anticipated and are not insurers against accidents and injuries"). CT Page 12251
One court has found that electricity is unreasonably dangerous. Ransome v. Wisconsin Electric Power Co.,87 Wis.2d 605, 275 N.W.2d 641 (1979) (Electricity which exceeded the expected voltage range by between 760 volts and 3660 volts was regarded as unreasonably dangerous since the entry of such excessive voltage into plaintiff's house was beyond the plaintiff's reasonable expectations).
The following are cases where courts have held that the electricity at issue was not unreasonably dangerous. ElginAirport Inn, Inc. v. Commonwealth Edison Co., 89 Ill. 138,432 N.E.2d 259 (1982) (The test of unreasonable dangerousness was not satisfied where the utility could do nothing to prevent the occasional occurrence of a defect in its current, where the plaintiff rather than the utility was in the best position to minimize the risk by adequately protecting its equipment);Priest v. Brown, 302 S.C. App. 405, 396 S.E.2d 638, 641 (1990) (Electric utility could not be held strictly liable for electrocution death of sheriff who attempted to move downed power line from road after automobile accident, in absence of evidence that electricity in line had been placed into the stream of commerce by utility, or evidence of an unreasonably dangerous defective condition); Sisson v. Texas-New MexicoPower Co., 722 S.W.2d 260 (Tex.App. 1 Dist. 1986) (Electricity which was supplied to correctional facility was not defective as marketed and, therefore, did not subject electric utility to strict liability for injuries to inmate working on facilities internal equipment); Otte v. DaytonPower Light Co., 37 Ohio St.3d 33, 523 N.E.2d 835, 842
(1988) ("Strict liability in tort for damages caused by [stray voltage] is not a cause of action that may be asserted against a public utility"); Carollo v. Newton, 492 So.2d 205, 208
(La.App. 4 Cir. 1986) (Homeowner not held strictly liable for death of repairman who was electrocuted while installing air conditioner motor because the plaintiff could not prove that the panel posed an unreasonable risk of injury); Fitzpatrickv. U.S. West, Inc., 246 Neb. 225, 518 N.W.2d 107 (1994) (Connection of electricity to building performed by public utility is not abnormally dangerous or ultrahazardous activity, and employer of public utility as independent contractor will not be held strictly liable for injuries sustained during course of such connection operation.)
Many courts do not impose upon electrical companies CT Page 12252 strict liability for accidents involving their with transmission lines. SmithBower v. Southwest Cent. Rural Elec.Co-op. , 374, Pa. Super. 46, 542 A.2d 140 (1988) ("[T]he courts have consistently held that the use and maintenance of high voltage electrical transmission lines by electric companies does not constitute an abnormally dangerous activity");Martinez v. Grant County Public Utility Dist. No. 2, 70 Wash. App. 134,851 P.2d 1248, 1250 (1993) (Washington "does not impose strict liability on electrical power companies for injuries arising out of contact with . . . power lines");Kolpin v. Pioneer Power Light Co., Inc., 154 Wis.2d 487,453 N.W.2d 214 (1990).
A few courts do not hold electric companies strictly liable under any circumstances. Walston v. NortheastUtilities, 10 CONN. L. RPTR. No. 9, 280 (December 13, 1993) (Gordon, J.) ("Electric utility companies can not be held liable for damages in the absence of fault"); Mancuso v. SouthernCalifornia Edison Co., 283 Cal. Rptr, 300, 307 (Cal.App. 2 Dist. 1991) (Power companies are not engaged in ultrahazardous activity.) In reviewing the factors of the Rest. of Torts and current case law, it strains credibility to hold a utility company strictly liable unless negligence is involved. The generation or transmission or supply of electricity touches all of us in our lives. We as citizens have overwhelmingly concluded that strict regulation of our public utilities is a necessary and prudent way to balance our insatiable use of electricity. Our homes, offices and our safety depend on its supply and safe use. To require a utility company to shoulder strict liability without fault would basically undermine the economic balance struck between the state and its utility companies at the whim of unforeseen or uncontrollable events, that can happen around electricity without negligence. The motion to strike Count Two is granted.
 II
The defendant's in this case ask this court to strike Count Three in which the plaintiff brings under the Product Liability Act, Connecticut General Statutes § 52-572n. In reviewing the count the plaintiff seeks to impose strict liability upon the defendant by claiming the defendant's electricity is a "product" and that it was defective.
First, in order for the plaintiff's claim of strict CT Page 12253 liability to be sustained, this court must find that electricity is a product. A quick look at the Product Liability Act shows no definition of a "product", nor does our present case law. It is the defendant's position that it is a "service" company and it points to Connecticut General Statutes § 53A-118(a)(1) which states:
 Commodities of a public utility nature such as . . . electricity . . . constitute property, but the supplying of such a commodity to premises from an outside source by means of wires, pipes, conduits or other equipment shall be deemed a rendition of a service rather than a sale or delivery of property. (Emphasis supplied.)
The Department of Public Utility Control regulates the utility companies, and those regulatory statutes are administered on the basis that the utility company provides a "service" not a product.
Looking for a definition of the phenomena of electricity we find:
 electricity: 1. a: a fundamental entity of nature consisting of negative and positive kinds composed respectively of electrons and protons or possibly of electrons and positrons, observable in the attractions and repulsions of bodies electrified by friction and in natural phenomena (as lightning or the aurora borealis), and usu, utilized in the form of electric currents; b: electric current or power; 2: a science that deals with the phenomena and laws of electricity.
 "[a]" imponderable and invisible agent producing light, heat, chemical decomposition, and other physical phenomena; an invisible source . . . ; not a material substance; the name given to the cause of series of phenomena exhibited by various substances, and also to the phenomena themselves; a subtle, invisible, noiseless agency; and an exceedingly subtle agency that pervades all space."
29 C.J.S. Electricity § 1. CT Page 12254
The practical difficulty of treating electricity as a "product" is that as a phenomena summoned from nature and the laws of physics and it has no inherent ability to be defective. Yes, it can be dangerous, destructive, or life taking if misused or negligently used but like other matters created by alchemy it by itself cannot be defective.
In Tayler v. CLP, Super. Ct., J.D. Fairfield, No. 012848 (June 30, 1970), Justice Callahan's thoughts and logic still apply:
 . . . for the life of me don't see how you could have defective electricity, in the sense of a product. You might have too much or too little, but that would be the result of a problem with the delivery system not the electricity or what the plaintiff would classify as a "product." It would seem to me analogous to a situation where a water pipe broke and flooded the cellar; would you then say there was "defective water."
Many courts that have addressed the issue of whether electricity can provide a foundation for a strict product liability action under § 402A have held that electricity can be a product. Houston Lighting Power Co. v. Reynolds,712 S.W.2d 761, 766 (Tex.App. 1st Dist. 1986) ("While the distribution of electricity through a system of towers, poles, and wires may well be considered a service, the electricity itself is a consumable product"); Mancuso v. SouthernCalifornia Edison Co., 283 Cal.Rptr. 300, 307 (Cal.App. 2 Dist. 1991) (The California courts "have had little trouble in concluding that electricity delivered to homes and businesses is a `product'"); Ransome v. Wisconsin Elec. Power Co.,87 Wis.2d 605, 275 N.W.2d 641, 643 (1979) ("The distribution might well be a service, but the electricity itself, in the contemplation of the ordinary user, is a consumable product.").
Conversely, a few courts have held that electricity is not a product, but is service. Bowen v. Niagara Mohawk PowerCorporation, 590 N.Y.S.2d 628, 632 (A.D. 4 Dept. 1994) (Electricity is not an "individual product. Instead, the consumer pays for use of the electricity"); Otte v. DaytonPower Light Co., 37 Ohio St.3d 33, 523 N.E.2d 835, 838
(1988) ("A `product' is anything made by human industry or CT Page 12255 art. Electricity appears to fall outside this definition.").
The courts that have labelled electricity a product have been consistent in holding that the electricity must have been placed into the stream of commerce before § 402A can attach.Schriner v. Pennsylvania Power Light Co., 348 Pa. Super. 177,501 A.2d 1128, 1134 (1985) (If electricity in an unreasonably dangerous condition passes through the meter of a user or consumer and into the stream of commerce, causing physical harm, the doctrine of strict liability in tort may be applied against the public utility); Smith v. Home Light andPower Co., 734 P.2d 1051, 1055 (1987) ("[A]t least until the electricity reaches a point where it is made available for consumer use, it is not a `product' that has been `sold' or otherwise `placed in the stream of commerce' for the purpose of strict products liability under § 402A");Ransome v. Wisconsin Electric Power Co., 87 Wis.2d 605,275 N.W.2d 641 (1979) (Power company held strictly liable for damage caused by electricity traveling through the utility's lines into the plaintiff's house at a voltage between 1,000 and 4,000 volts); Pierce v. Pacific Gas Elec. Co.,212 Cal.Rptr. 283 (Cal.App. 3 Dist. 1985); Carbone v. ConnecticutLight Power Co., 40 Conn. Sup. 120, 482 A.2d 722 (1984);Williams v. Detroit Edison Co., 63 Mich. App. 559,234 N.W.2d 702 (1975); Aversa v. Public Serv. Elec. Gas Co.,186 N.J. Super. 130, 451 A.2d 976 (1982); Houston Lighting Power Co. v. Reynolds, 712 S.W.2d 761 (Tex.App. 1st Dist. 1986);Thibos v. Pacific Gas Electric Co., 232 Cal.Rptr. 11 (Cal.App. 1 Dist. 1986); Petroski v. Northern Indiana Public Service Co.,171 Ind. App. 14, 354 N.E.2d 736 (1976).
The point at which electricity enters the stream of commerce, losing its character as a service and assuming that of a product, has been subject to dispute. In some jurisdictions, electricity has been considered to have left the utility's control only after it has passed through the customer's electric meter, the point where the customer's charges are generally computed. Mancuso v. SouthernCalifornia Edison Co., 283 Cal.Rptr. 300, 308 (Cal.App. 2 Dist. 1991) ("Electricity which has passed through the consumer's meter has been sold and delivered. It is in the stream of commerce") Public Service Indiana, Inc. v. Nichols,494 N.E.2d 349 (Ind.App. 4 Dist. 1986) ("Electricity is considered to be placed into the stream of commerce when it reaches its destination in a home or factory"); Hills v. OzarkCT Page 12256Border Elec. Co-op, 710 S.W.2d 761 (Tex.App. 1 Dist. 1986) (A seller of electricity is subject to strict liability in tort if the electricity has been put into the "stream of commerce" beyond the seller's distribution system) Kolpin v. PioneerPower Light Co., 154 Wis.2d 487, 453 N.W.2d 214 (1990) (Court held that stray voltage is not a product); Otte v.Dayton Power Light Co., 37 Ohio St.3d 33, 523 N.E.2d 835,842 (1988) ("Strict liability tort for damages caused by [stray voltage] is not a cause of action that may be asserted against a public utility"); Buckeye Union Fire Ins. Co. v.Detroit Edison Co., 38 Mich. 325, 196 N.W.2d 316 (1972);Williams v. Detroit Edison Co., 63 Mich. App. 559,234 N.W.2d 702 (1975); Aversa v. Public Service Electric Gas Co.,186 N.J. Super. 130, 451 A.2d 976 (1982); Schriner v. PennsylvaniaPower Light Co., 348 Pa. Super. 177, 501 A.2d 1128 (1985);Ransome v. Wisconsin Electric Poser Co., 87 Wis.2d 605,275 N.W.2d 641 (1979).
Another view asserts that once electricity has been reduced to a marketable voltage, the utility has released control, thereby rendering the electricity a product within the meaning of strict liability. Smith v. Home Light PowerCo., 734, P.2d 1051, 1055 (Colo. 1987) ("[A]t least until the electricity reaches a point where it is made available for consumer use, it is not a `product' that has been `sold' or otherwise placed in the `stream of commerce' for purposes of strict products liability under § 402A"); Pierce v. Pacific Gas Electric Co., 212 Cal.Rptr. 283, 166 Cal.App.3d 68 (3d Dist. 1985). Only one court has held that electricity is in the stream of commerce when it is in the process of being delivered to the consumer through the transmission lines of the power company. Houston Lighting Power Co. v. Reynolds,712 S.W.2d 761, 767 (Tex.App. 1 Dist. 1986).
In reviewing the above cases, this court is persuaded that as a practical and legal matter the acceptance of electricity as a product has been very rare. The concept of strict liability for the use or misuse of electricity has not I found a solid home in the area of product liability case law. This court agrees with the defendant that electricity is not a "product" thereby striking Count Three of the plaintiff's complaint. CT Page 12257