[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On March 29, 1994, the plaintiffs, Jonathan E. Walston III and Leah C. Walston, filed an eleven count second substituted complaint against the defendants, Northeast Utilities and Connecticut Light Power Company. The plaintiffs allege the following facts in their second substituted complaint.
The plaintiffs were the record owners of 48 Meadow Street, Guilford, Ct from 1975 to 1983. The named plaintiff, Jonathan E. Walston III, resided on Meadow Street, Guilford, Ct from 1947 to 1968 and from 1971 to 1983. CT Page 14351
The defendant, Connecticut Light and Power Company (CLP), is a specially chartered corporation organized and existing under Connecticut laws. The defendant, Northeast Utilities (NU), is a Massachusetts corporation doing business in Connecticut, and is a holding company for CLP. At all relevant times, the defendants were in the business of producing, selling and distributing electric power to the residents of Guilford, Ct, including the plaintiffs. The defendants owned, operated, controlled and maintained electrical equipment and facilities, including a power substation on Meadow Street, in close proximity to the plaintiffs' home. High voltage distribution and other powerlines emanated from this electrical equipment, facilities and power substation, in close proximity to the plaintiffs' home. Consequently, this electrical equipment, facilities, power lines and substation emitted electromagnetic radiation (EMR) onto the plaintiffs', property and residence, and exposed the plaintiffs to EMR causing them injury.
On May 5, 1994, the defendants filed an answer with five special defenses. The plaintiffs filed a reply on May 9, 1994, denying the allegations of each special defense.
On September 29, 1994, the defendants filed a motion for summary judgment on counts five and six of the plaintiffs' second substituted complaint, which allege violations of the Connecticut Product Liability Act, and on counts nine and ten, which allege violations of the Connecticut Unfair Trade Practices Act. The defendants filed a memorandum of law in support of their motion, and the affidavit of Robert E. Carberry, an electrical engineer employed by NU.
On January 24, 1995, the plaintiffs filed a memorandum of law in opposition to the defendants' motion for summary judgment and included with their memorandum the affidavit of William T. Kaune, the Chief Scientist and President of EM Factors, and the affidavit of Jonathan E. Walston, III, the named plaintiff in this case.
In response, on February 15, 1995, the defendants filed a reply memorandum in support of their motion for summary judgment and included with their memorandum the supplemental affidavit of Robert E. Carberry.
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that CT Page 14352 there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. . . . Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Alterations in original; citations omitted; internal quotation marks omitted.) Home Ins. Co. v.Aetna Life Casualty Co., 235 Conn. 185, 202, 663 A.2d 1001
(1995).
The plaintiffs' second substituted complaint alleges violations of Connecticut's Product Liability Act (CPLA), General Statutes § 52-572m-r, in count five as to Jonathan E. Walston and in count six as to Leah C. Walston.
The defendants argue they are entitled to judgment as a matter of law on the CPLA counts because there is no genuine issue of material fact as to whether electricity flowing through CLP's substation and powerlines, or EMR associated with it, is a product sold or distributed by the defendants. The defendants argue that both within Connecticut, and elsewhere, sound judicial authority holds that electricity does not constitute a product. Alternatively, the defendants argue that the cases where courts have found electricity is a product do not apply to the facts in this instance. Further, the defendants declare that the plaintiffs have failed to demonstrate that the defendants entered a product into the, "stream of commerce."
In opposition, the plaintiffs argue that electricity is a product subject to the CPLA and genuine issues of material fact exist regarding the CPLA claims. Therefore, the plaintiffs argue summary judgment is inappropriate in this case.
In reply, the defendants argue, inter alia, that: (1) no issue of fact precludes summary judgment; (2) the plaintiffs have failed to present legal authority supporting a product liability CT Page 14353 claim on the effects of electricity carried on a utility's transmission and distribution system; (3) a recent Connecticut superior court has ruled that no product liability claim lies against suppliers of electricity; and (4) the plaintiffs have failed to overcome the defendants' public policy arguments against imposition of strict product liability on a pervasively regulated electric utility.
Although the plaintiffs and defendants have each briefed numerous issues in their; respective memoranda, the court needs only to address the dispositive issue of whether electricity constitutes a product for purposes of the CPLA. "Once a particular transaction is labeled a service, as opposed to a sale of a product, it is outside the purview of [the]. . . product liability statute." (Internal quotation marks omitted.) Zichichiv. Middlesex Memorial Hospital, 204 Conn. 399, 405, 528 A.2d 805
(1987). Therefore, a party needs the factual predicate of a sale of a product to assert a claim under the CPLA. Id.
The Connecticut legislature enacted the CPLA in 1979. General Statutes § 52-572m-r. General Statutes § 52-572m et seq. does not define the term product. Zichichi v. Middlesex MemorialHospital, supra, 204 Conn. 403. General Statutes § 52-572m(b), however, defines a product liability claim as including "all claims or actions brought for personal injury. . . caused by the. . . marketing. . . of any product." General Statutes §52-572m(b). "Section 52-572n(a) allows such claims to be brought against `product sellers'." (Internal quotation marks omitted.)Zichichi v. Middlesex Memorial Hospital, supra, 403. Therefore, "[t]o maintain a product liability action under § 52-572m et seq., the plaintiff must establish and prove, inter alia, that . . . the defendant was engaged in the business of selling the product. . . ." (Emphasis in original; internal quotation marks omitted.) Id.
In Carbone v. Connecticut Light Power Co., 40 Conn. Sup. 120,121, 482 A.2d 722 (1984), the court addressed the issue of whether electricity constitutes a product within the CPLA. The court declined to follow lower court rulings on this issue made prior to the enactment of the CPLA. Instead, the Carbone court found the reasoning of the Wisconsin Supreme Court in Ransome v.Wisconsin Electric Power Co., 87 Wis.2d 605, 275 N.W.2d 641
(1979) persuasive. The Ransome court held that electricity delivered to a home and measured by a meter is a product, and applied strict liability analysis. Carbone v. Connecticut Light CT Page 14354Power Co., supra, 122. The Carbone court then emphasized that "most recent decisions in other states hold a public utility strictly liable in situations where the electricity claimed to be defective has been released into the stream of commerce." Id., 123. Thus, once electricity has been delivered to a location and measured by the location's meter, the electricity becomes a product.
More recently a superior court addressed the question of whether electricity represents a product within the meaning of the CPLA in Curtis v. Northeast Utilities, Superior Court, judicial district of Hartford at Hartford, Docket No. 511572 (December 5, 1994, Norko, J., 13 Conn. L. Rptr. 137). The Curtis
court acknowledged that although some courts have held that electricity represents a product, other courts have held that it does not constitute a product. Id. The court observed that courts, which have recognized electricity as a product, have disputed the "point at which electricity enters the stream of commerce, losing its character as a service and assuming that of a product. . . . In some jurisdictions, electricity has been considered to have left the utility's control only after it has passed through the customer's electric meter, the point where the customer's charges are generally computed. . . . Another view asserts that once electricity has been reduced to a marketable voltage, the utility has released control, thereby, rendering the electricity a product within the meaning of strict liability." (Citations omitted.) Curtis v. Northeast Utilities, supra, 140. Upon reviewing cases from other states, the Curtis court determined that, "as a practical and legal matter the acceptance of electricity as a product has been very rare." Id. Consequently, the court held that electricity does not constitute a product. Id.
Because the Carbone test enunciates the earliest point in a utility's distribution of electricity where a Connecticut court has recognized electricity as a product, the court will use this test arguendo. The Carbone court held that once electricity has been delivered to a location and measured by the location's meter, the electricity becomes a product. The plaintiffs have alleged either in counts five and six of their second substituted complaint or in their affidavits the following statements. The plaintiffs allege that the defendants' electrical equipment and facilities, including a power substation on Meadow Street in Guilford, Ct, which is located in close proximity to the plaintiffs' home, emitted high voltage distribution and other CT Page 14355 powerlines. Further, they allege that this electrical equipment, facilities, powerlines and substation emitted EMR onto the plaintiffs' property and residence, and exposed plaintiffs to EMR. The plaintiffs also allege that the defendants' electricity was expected to and did reach the consumer without substantial change in condition. Consequently, the plaintiffs allege that this electricity, which emitted EMR, was in a defective condition unreasonably dangerous in that it caused and increased the risk of cancer and other illnesses to those who were exposed to it. Additionally, William Kaune stated in his affidavit that the plaintiffs were purchasers of power distributed over the power lines.
The plaintiffs, however, neither allege nor provide documentary evidence demonstrating that the electricity, which emitted EMR and harmed the plaintiffs, had been delivered to the plaintiffs' home and had been measured by their home's meter. In short, the plaintiffs' fail to allege the EMR was from electricity in their home. Consistent with Carbone v. ConnecticutLight Power Co., supra, the plaintiffs may only recover under CPLA from EMR which harms the plaintiffs after the electricity has been measured by their home's meter. Because the electricity in this case is not a product, the CPLA does not apply. Consequently, the court does not need to address the other arguments briefed by the parties regarding the CPLA. Therefore, the defendants' motion for summary judgment on the CPLA claims is granted.
The plaintiffs' second substituted complaint alleges violations of Connecticut's Unfair Trade Practices Act (CUTPA), General Statutes § 42-110b, in count nine as to Jonathan E. Walston III and in count ten as to Leah C. Walston.
The defendants argue they are entitled to summary judgment because the conclusory allegation that the plaintiff, Jonathan E. Walston III, was injured by electricity sold to him is unsupported by facts or evidence. Specifically, the defendants argue that the plaintiffs' claim that they were injured by electromagnetic fields emanating from the utility-owned facilities across the street from their house precludes them from claiming injury from electricity that they purchased. The defendants also argue that the complaint does not contain allegations that the plaintiffs purchased the electricity, or that it was delivered to them for consumption. CT Page 14356
In opposition, the plaintiffs argue they have properly alleged the elements of the CUTPA claims. Specifically, the plaintiffs argue that in Paragraph 14 of counts nine and ten of the second substituted complaint the plaintiff, Jonathan Walston III, alleges that he suffered injuries from the distribution or sale of electricity to him. Therefore, the plaintiffs argue the complaint does allege that the plaintiffs purchased electricity from the defendant.
In their reply brief, the defendants argue that the CUTPA claims must fail because the plaintiffs do not claim that the plaintiff, Jonathan E. Walston III, was injured by electricity that he purchased from the defendants. Particularly, the defendants argue the plaintiffs' CUTPA claims must fail because the plaintiffs do not claim that their injuries arose from electromagnetic fields associated with the electricity they purchased from the defendants. Rather they allege they were harmed by emissions from the defendants' power facilities, and they purchased electricity from the defendants.
In determining if a practice violates CUTPA, the court decides: "(1) [w]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise . . .; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury toconsumers [(competitors or other businessmen)]." (Emphasis added; internal quotation marks omitted.) A-G Foods. Inc. v. PepperidgeFarm, Inc., supra, 216 Conn. 215.
Generally, "[t]he office of a motion for summary judgment is not to test the legal sufficiency of the complaint, but is to test for the presence of contested factual issues." (Alterations in original). Hawthorne v. Lowe, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 30 13 93 (March 31, 1995, Cocco, J.), citing Burke v. Avitable, 32 Conn. App. 765,772, 630 A.2d 624, cert. denied, 228 Conn. 908, 643 A.2d 297
(1993). "Nevertheless, in Boucher Agency v. Zimmer, 160 Conn. 404,279 A.2d 540 (1971), the court ruled that a motion for summary judgment may be used to test the legal sufficiency of a complaint after an answer has been filed, and then, only `if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Id. CT Page 14357
In the present case, the defendant filed an answer to the second substituted complaint on May 5, 1994, and filed this motion for summary judgment on September 29, 1994. (Defendants' Answer to Plaintiffs' Second Substituted Complaint; Defendants' Motion for Summary Judgment on Product Liability and CUTPA Counts). Further, no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Therefore, the defendants may test the legal sufficiency of the CUTPA claims in the plaintiffs' second substituted complaint through this motion for summary judgment.
On March 15, 1994, the court, Martin, J., granted a motion to strike the CUTPA claims of the first substituted complaint in this action. Walston v. Northeast Utilities, Superior Court, judicial district of New Haven at New Haven, Docket No. 327441 (March 15, 1994, Martin, J.). In granting the motion, the court emphasized that "[t]he plaintiffs allege that they lived in close proximity to the powerlines and substation on Meadow Street which resulted in substantial personal and financial injury to him." Id. The court held that "[s]uch allegations, however, do not show that the plaintiffs suffered a loss from the distribution or sale of electricity to them." Id.
In response to the court granting the defendants' motion to strike the CUTPA claims, the plaintiffs filed their second substituted complaint on March 29, 1994. Within this complaint, the plaintiffs repleaded their CUTPA claims. Consequently, the plaintiffs now allege that "[p]laintiff, a member of the consuming public, lived in close proximity to the powerlines and substation on Meadow Street and suffered serious, painful and permanent injuries from the distribution or sale of electricityto him." (Emphasis added.)(Plaintiffs' Second Substituted Complaint, Counts Nine and Ten, ¶ 14).
Although the plaintiffs now allege injury from the distribution or sale of electricity to them, this statement is conclusory. The plaintiffs do not support this statement with factual allegations within the second substituted complaint, nor within their affidavits submitted with the plaintiffs' brief in opposition to the motion for summary judgment. "Each pleading shall contain a plain and concise statement of the material facts on which the pleader relies. . . ." Practice Book § 108.
Consequently, because the court can test the legal sufficiency of a complaint on summary judgment, and because the CT Page 14358 plaintiffs pleaded conclusory allegations without factual support in their second substituted complaint, the court grants the defendants' motion for summary judgment regarding the plaintiffs' CUTPA claims.
Additionally, the plaintiffs have essentially brought the same CUTPA claims as Judge Martin heard and decided on March 15, 1994, because the plaintiffs repleaded their CUTPA claims in their second substituted complaint through mere conclusory statements without factual support. "The law of the case is not written in stone but is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be invoked. . . ." (Citation omitted; internal quotation marks omitted). Stevens v. Hartford Accident Indemnity Co.,39 Conn. App. 429, 437, 664 A.2d 826 (1995). "In essence [the law of the case] expresses the practice of judges generally to refuse to reopen what has been decided and is not a limitation on their power." (Alterations in original). Id.
In S.M.S. Textile Mills. Inc. v. Brown, Jacobson,Tillinghast, Lahan King, P.C., 32 Conn. App. 786, 798, 631 A.2d 340
(1993), cert. denied, 228 Conn. 903, 634 A.2d 296 (1993), the defendant, Brown and Jacobson, moved to strike the CUTPA count of the plaintiff's complaint, and the trial court granted the motion to strike, noting that the count was not pleaded with sufficient specificity. Id. "The plaintiff amended the complaint, adding a general statement about a `course of conduct,'" and the defendant again moved to strike. Id. Then, according to the Supreme Court "[t]he trial court properly noted that the amended complaint was substantially the same as the previous one, and, applying the law of the case doctrine, granted the second motion to strike." Id.
Therefore, given the insufficiencies with the plaintiffs' CUTPA claims in their second substituted complaint and the court's previous ruling to strike the CUTPA claims, the court grants the defendants' motion for summary judgment on the CUTPA claims.
Because there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law, the court grants the defendants' motion for summary judgment on counts, five, six, nine, and ten.
Howard F. Zoarski, Judge CT Page 14359